UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
HERBERT FRANCL, Derivatively on                             :
Behalf of RAMBUS INC.,                                      :
                                                            :
                    Plaintiff,                              :
                                                            :
          v.                                                :
                                                            :
PRICEWATERHOUSECOOPERS LLP,                                 :
                                                            :    CASE NO. 07-CIV-7650 (GBD)
                    Defendant,                               :
                                                            :
          -and-                                             :
                                                            :
RAMBUS INC., a Delaware Corporation,                        :
                                                            :
                    Nominal Defendant.                      :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW OF PRICEWATERHOUSECOOPERS LLP IN SUPPORT OF ITS MOTION TO TRANSFER THE ACTION


James H.R. Windels, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT........................................................................1

STATEMENT OF FACTS..........................................................................3

ARGUMENT.......................................................................................6

I.    JURISDICTION AND VENUE ARE PROPER IN THE NORTHERN
      DISTRICT OF CALIFORNIA ............................................................... 6

II.   THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN
      DISTRICT OF CALIFORNIA ............................................................... 7

      A.    Public Interest Factors, in Particular Judicial Economy, Favor Transfer
            to the Northern District of California........................................... 8

            1.    Litigation of Related Claims in a Single Tribunal ......................... 8

            2.    The Desirability of Resolving Controversies Where They Occur 10

            3.    Familiarity with Applicable Law .................................................. 11

      B.    Private Interest Factors Weigh in Favor of Transfer ............................... 12

            1.    Convenience of the Witnesses and Availability of Process.......... 12

            2.    The Locus of Operative Facts ...................................................... 14

            3.    Convenience of the Parties........................................................... 15

            4.    Location of Relevant Documents.................................................. 16

            5.    Plaintiff's Choice of Forum Should Be Accorded Little
                  Weight............................................................................................16

CONCLUSION.......................................................................................18

i

# TABLE OF AUTHORITIES

PAGE

## Cases

*Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615 (S.D.N.Y. 1995) ............................... 17

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F. 3d 573 (2d Cir. 2006) ............................................................................. 11

*Bombardier Capital Inc. v. Solomon*, 00 Civ. 0848 (RMB), 2000 U.S. Dist. LEXIS 16711 (S.D.N.Y. Nov. 17, 2000) ............................................................. 12, 14

*D.H. Blair & Co. v. Gottdiener*, 462 F. 3d 95 (2d Cir. 2006) .................................... 7

*DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750 (S.D.N.Y. 2000) ..................... 11, 12

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990) ......................................................... 10, 11

*Foothill Cap. Corp. v. Kidan*, No. 03 Civ 3976 (RMB), 2004 U.S. Dist. LEXIS 3634 (S.D.N.Y. Mar. 8, 2004) .................................................................... 12, 15

*Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d. 370 (S.D.N.Y. 2006) ........... 9

*Heyco, Inc. v. H. Kerry Hyman*, 636 F. Supp. 1545 (S.D.N.Y. 1986) ............................. 10

*In re Stillwater Mining Co. Sec. Litig.*, No. 02 Civ. 2806, 2003 U.S. Dist. LEXIS 7983 (S.D.N.Y. May 12, 2003) .................................................................... 16

*Int. Sec. Exchange, LLC v. Ch. Bd. Options Ex. Inc.*, No. 06 Civ. 13445 (RMB) (TMK), 2007 U.S. Dist. LEXIS 38427 (S.D.N.Y. May 24, 2007) ................... 8, 12, 13

*Johnson v. Columbia Properties Anchorage, LP*, 437 F. 3d 894 (9th Cir. 2006) ............. 6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ............................................. 11

*Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161 (S.D.N.Y. 1992) ................................................................................................................... 8, 9

*Mastercard Int. Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. Jun. 18, 2004) ....................................... 8, 13

*Pilates, Inc. v. Pilates Instit., Inc.*, 891 F. Supp. 175 (S.D.N.Y. 1995) ............................. 7

*Posven, C.A. v. Liberty Mutual Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004) ......... 7, 16

*Prudential Sec., Inc. v. Norcom Dev., Inc.*, No. 97 Civ. 6308, 1998 U.S. Dist. LEXIS 10569 (S.D.N.Y. Jul. 16, 1998) ...................................................................... 11

*Ravenswood Investment Co., LP v. Bishop Capital Corp.*, No. 04 CV 9266 (KMK), 2005 U.S. Dist. LEXIS 1388 (S.D.N.Y. Feb. 1, 2005) ............... 12, 14-15, 16

*Royal & Sunalliance v. British Airways,* 167 F. Supp. 2d 573 (S.D.N.Y. 2001) ....... 12, 14

*Schultze v. DaimlerChrysler Corp.*, No. 06 Civ. 1883 (NRB), 2006 U.S. Dist. LEXIS 85273 (S.D.N.Y. Nov. 16, 2006) ................................................................... 17

*Seinfeld v. Bartz*, No. 00 Civ. 5195 (DC), 2001 U.S. Dist. LEXIS 7168 (S.D.N.Y. Jun. 5, 2001) ................................................................................................... 12, 16

*Strauss v. West Highland Capital*, No. 00 Civ. 01184 (GEL), 2000 U.S. Dist. LEXIS 14937 (S.D.N.Y. Oct. 6, 2000) .................................................................. 17

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F. 3d 281, 284 (2d Cir. 2006) ............................................................................................................................ 11

*Williams v. City of New York*, No. 03 Civ. 5342 (RWS), 2006 U.S. Dist. LEXIS 6470 (S.D.N.Y. Feb. 21, 2006) ..................................................................... 6, 8, 9

## Statutes

28 U.S.C. § 1391(a)(2) ...................................................................................................... 7

28 U.S.C. § 1401 ............................................................................................................... 7

28 U.S.C. § 1404(a) .......................................................................................................... 7

## Other Authorities

16 *Moore's Federal Practice* (Matthew Bender 3d Ed.) ................................................... 6

iii

## MEMORANDUM OF LAW OF PRICEWATERHOUSECOOPERS LLP IN SUPPORT OF ITS MOTION TO TRANSFER THE ACTION

Defendant PricewaterhouseCoopers LLP ("PwC") respectfully submits this memorandum of law in support of its motion to transfer this action from the U.S. District Court for the Southern District of New York to the U.S. District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

### PRELIMINARY STATEMENT

Plaintiff is purportedly a shareholder of Rambus Inc. ("Rambus") and brings this action derivatively on behalf of Rambus against its independent public auditor, PwC. Plaintiff alleges that PwC breached contractual and other duties to Rambus by failing to identify in the course of its audits that Rambus was allegedly backdating its stock option grants, and that PwC issued false and misleading audit opinions with respect to Rambus' financial statements. Plaintiff alleges that Rambus was damaged by, among other things, having to conduct a costly internal investigation into options backdating and to restate its financial results over a period of several years.

The basic issue raised by Plaintiff in this case – whether there was options backdating at Rambus and who should be responsible for it – is already the subject of approximately a dozen actions pending in the U.S. District Court for the Northern District of California, several of which were filed over a year ago. These cases include shareholder derivative actions brought against certain of Rambus' directors and officers and federal securities law actions against Rambus, certain of its directors and officers, and PwC. The issues being litigated in the California actions are substantially similar to those which underlie Plaintiff's claims before this Court – whether and to what extent there was options backdating at Rambus, who participated in it, who knew or should have

known about it, and what harm it caused the company and its shareholders. All of the cases in the Northern District of California are pending before the Honorable Jeremy Fogel, who has issued an order formally consolidating and naming a lead plaintiff in the derivative cases filed in that Court.

On October 18, 2006, the Board of Directors of Rambus established a Special Litigation Committee (the "SLC") in response to the various shareholder demands it had received. The SLC announced the results of its investigation and filed its report with the Northern District of California on August 24, 2007. It is anticipated that the sufficiency of the SLC's process and findings will be fully tested beginning as early this fall in the California derivative action through a contested motion to terminate certain of the claims in that litigation.

On August 27, 2007, over 15 months after the first derivative case was filed in the Northern District of California, Plaintiff filed the instant action in this Court. There is little if any nexus between Plaintiff's claims and this Court, however: Rambus is located in the Northern District of California, the PwC office which conducted the audits of Rambus is also located in that District, and the events underlying Plaintiff's claims – the alleged backdating by Rambus and PwC's audits – took place almost entirely in that District as well. The complaint identifies no act or event relevant to Plaintiff's claims which took place in the Southern District of New York. Plaintiff himself is, according to his verification of the Complaint, a resident of Spain.

The circumstances present here overwhelmingly support a transfer of the case to the Northern District of California pursuant to Section 1404(a). All of the fundamental "public interest" and "private interest" factors recognized by decisions in this District and

2

elsewhere point decisively towards transfer.  From the public interest perspective of judicial economy and efficiency, transfer would greatly reduce the overall burdens on the judicial system and lead to more consistent findings and rulings.  From the private interest perspective, the witnesses in this case are principally located in the Northern District of California where both Rambus and the PwC office which audited Rambus are located.  Compelling these witnesses potentially to testify on the same issues in multiple proceedings on the east and west coasts makes little sense.

Whatever motivations or stratagems Plaintiff is pursuing by bringing his case in this Court and avoiding the obvious center of gravity of litigation relating to options backdating at Rambus cannot outweigh the numerous practical considerations supporting transfer.  Accordingly, for the reasons set forth below, PwC respectfully submits that the Court should transfer this case to the Northern District of California.

## STATEMENT OF FACTS

On May 30, 2006, Rambus announced that the Audit Committee of its Board of Directors had commenced an investigation into the company's process for granting stock options.  The following day, the first of several shareholder derivative actions based on purported stock option backdating was filed in the Northern District of California against certain current and former Rambus officers and directors and assigned to the Honorable Jeremy Fogel.  *See In re Rambus Deriv. Litig.*, C-06-3513-JF Docket Sheet (Ex. 1).[1]
Two more actions were filed on June 23, 2006 and July 5, 2006, respectively.  *See* Order Granting Plaintiffs' Motion to Consolidate Related Cases and Appoint Lead Plaintiff and

---

[1] Citations in the form Ex. __ are to exhibits to the Declaration of Brooke Grossman, dated September 25, 2007 and filed concurrently with this memorandum.

Lead Counsel, ¶ 1 (Ex. 2) (the "Consolidated Derivative Action"). On August 10, 2006, Judge Fogel issued an order consolidating these actions (the "Consolidation Order") and stating that any "other actions now pending or later filed in this Court which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention." *See Id*. at ¶ 2 (Ex. 2). Judge Fogel further requested "the assistance of counsel in calling to the attention of the clerk of this Court the filing or transfer of any case which properly might be consolidated as part of *In re Rambus Inc. Derivative Litigation*." *Id*. ¶ 8.

Also pending before Judge Fogel in the Northern District of California are a consolidated class action securities litigation, first filed on July 17, 2006 (the "Consolidated Class Action"), and a consolidated securities action brought pro se by three former shareholders, first filed on March 1, 2007 (the "Consolidated Pro Se Action"). *See In re Rambus Inc. Sec. Litig.*, C-06-4346-JF Docket Sheet (Ex. 3); *Kelley et al v. Rambus Inc. et al*, C-07-01238-JF (Ex. 4). Both of these actions name Rambus, certain of its officers and directors, and PwC as defendants.[2]

The claims at issue in the instant case, the Consolidated Derivative Action, the Consolidated Class Action, and the Consolidated Pro Se Action all arise out of purported stock option backdating at Rambus. *See, e.g.*, Amended Consolidated Shareholder Derivative Complaint ¶¶ 2-8 (Ex. 6); Consolidated Amended Class Action Complaint ¶¶ 3-6 (Ex. 7); Consolidated Pro Se Complaint ¶¶ 1-2 (Ex. 8). At issue in all of these

---

[2] Derivative actions against Rambus' officers and directors were also filed in California and Delaware state courts. The California action was dismissed, and the Delaware action has been stayed. *See Report of the Special Litigation Committee of the Board of Directors of Rambus Inc.* ("SLC Report"), at 8 n.4 (Ex. 5).

actions is whether backdating occurred; who, if anyone, knew of the alleged backdating; what, if any, actions were taken to conceal the backdating from individuals at Rambus and/or its public accountants; and what the legal consequences of these occurrences are. Although the present case purports to bring only professional negligence and breach of contract claims, the focus of the allegations is on the same audits and audit opinions of PwC that are the subject of the securities law actions pending against PwC. All of the material events – including the stock option grants in question and the provision of PwC's audit services – occurred in the Northern District of California, where the large majority of potentially material witnesses likely work or reside. *See generally* Declaration of Daniel Zwarn, dated September 25, 2007 ("Zwarn Decl.").

On August 30, 2006, Plaintiff purportedly mailed a letter to the Rambus Board of Directors. That letter demands that the company "commence legal action against those of its officers and directors, including each one of you, who have been responsible for failing to fulfill your fiduciary duties to the Company, reckless management and waste of corporate assets. To the extent there are professionals responsible for the Company's actual and potential damages . . . our client additionally demands that the Company commence litigation against such persons." Ex. A to Complaint at 1.

On October 18, 2006, Rambus' Board of Directors established a SLC to determine how the company should respond to the derivative actions. On August 24, 2007, the SLC issued its report, which announced the settlement of claims against certain individual defendants in the Consolidated Derivative Action and the SLC's recommendation to terminate the claims against other individual defendants, with the

exception of the claims against former Vice President of Human Resources Ed Larsen which the SLC decided to assume and prosecute. *See* SLC Report at 1-5 (Ex. 5).

According to the Complaint, Plaintiff took no action to follow up on the demand letter it had sent, even after Rambus announced that a SLC had been convened to consider possible actions arising out of Rambus' option granting activities. Rather, three days after the report of the SLC was released, Plaintiff instituted this action in the Southern District of New York against PwC and nominal defendant Rambus.

## ARGUMENT

### I.    JURISDICTION AND VENUE ARE PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA

As a preliminary matter, this Court must determine whether the action could have been brought in the Northern District of California, 28 U.S.C. § 1404(a), which requires determining whether that District Court would have personal jurisdiction over the defendants and whether venue would be proper there. *See Williams v. City of New York*, No. 03 Civ. 5342 (RWS), 2006 U.S. Dist. LEXIS 6470, at *6 (S.D.N.Y. Feb. 21, 2006).

The Northern District of California has personal jurisdiction over Rambus because Rambus maintains its principal place of business there. 16 *Moore's Federal Practice*, § 108.41[3] (Matthew Bender 3d Ed.). The Court also has personal jurisdiction over PwC because, as a limited liability partnership, PwC is deemed to be a citizen of every state in which its partners are citizens, *Johnson v. Columbia Properties Anchorage, LP,* 437 F. 3d 894, 899 (9th Cir. 2006), and PwC has partners that are resident in that District. *See* Zwarn Decl. ¶ 6, 8. Finally, venue is proper in the Northern District of California because a substantial part of the events that gave rise to the claims, including

6

the alleged backdating and PwC's audits of Rambus, occurred there.  *See* 28 U.S.C. §§

1391(a)(2), 1401.

## II.    THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

"For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought."  28 U.S.C. § 1404(a).  A motion pursuant to Section 1404(a) should be

granted if transfer will serve the convenience of the parties and witnesses and promote

the interests of justice.  *See, e.g., Posven, C.A. v. Liberty Mutual Ins. Co.*, 303 F. Supp. 2d

391, 401 (S.D.N.Y. 2004).  "District courts have broad discretion in making

determinations of convenience under Section 1404(a) and notions of convenience and

fairness are considered on a case-by-case basis."  *D.H. Blair & Co. v. Gottdiener*, 462 F.

3d 95, 106 (2d Cir. 2006).

In determining a motion for transfer, courts consider the following factors:

> (1) the convenience of the witnesses; (2) the location of
> relevant documents and relative ease of access to sources of
> proof; (3) the convenience of the parties; (4) the locus of
> operative facts; (5) the availability of process to compel the
> attendance of unwilling witnesses; (6) the relative means of
> the parties; (7) the forum's familiarity with the governing
> law; (8) the weight accorded to the plaintiff's choice of
> forum; and (9) trial efficiency and the interests of justice,
> based on the totality of the circumstances.

*Pilates, Inc. v. Pilates Instit., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995).  In weighing

these factors, "a court must balance 'private interest factors,' including the convenience

of the litigants and 'all other practical problems that make trial of a case easy,

expeditious, and inexpensive,' and 'public interest factors,' which include the

administrative and jurisdictional interests of the districts involved." *Int. Sec. Exchange, LLC v. Ch. Bd. Options Ex. Inc.*, No. 06 Civ. 13445 (RMB) (TMK),  2007 U.S. Dist. LEXIS 38427, at \*5 (S.D.N.Y. May 24, 2007)  (citing *Iragorri v. United Technologies Corp.*, 274 F. 3d 65, 74 (2d Cir. 2001) (*en banc*)).

### A.    Public Interest Factors, in Particular Judicial Economy, Favor Transfer to the Northern District of California

This Court has recognized that the interests of justice and judicial economy can be determinative in evaluating whether transfer is warranted.  *See*, *e.g.*, *Williams,* 2006 U.S. Dist. LEXIS 6470 at \*9; *Mastercard Int. Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 U.S. Dist. LEXIS 10906, at \*25 (S.D.N.Y. Jun. 18, 2004).  Courts have considered three factors under this umbrella:  (1) the policy of litigating related claims in a single tribunal; (2) the preference for having local controversies adjudicated locally; and (3) the policy of having cases adjudicated by the federal court sitting in the state whose law will apply.  *See infra* Sections II.A.1., II.A.2, and II.A.3, respectively.  Each of these factors weighs strongly in favor of transfer here.

### 1.    Litigation of Related Claims in a Single Tribunal

Courts have expressed a "strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161, 165 (S.D.N.Y. 1992) (quoting *Wyndham Associates v. Bintliff,* 398 F. 2d 614, 619 (2d Cir. 1968)); *see also Mastercard*, 2004 U.S. Dist. LEXIS 10906 at \*26.  The presence of related litigation in the transferee forum

8

involving the same factual and legal issues thus weighs heavily in favor of transfer. *See, e.g., Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d. 370, 376 (S.D.N.Y. 2006); *Williams*, 2006 U.S. Dist. LEXIS 6470 at *10.

Where related litigation is pending in more than one court, there is a presumption that the court which first had possession of one of several related actions should decide it, "absent the showing of balance of conveniences . . . or special circumstances . . . giving priority to the second." *Manufacturers*, 798 F. Supp. at 166.

In the instant case, Plaintiff filed his Complaint more than a year after three other derivative actions based on very similar facts had been filed and consolidated in the Northern District of California and after a lead plaintiff had been appointed there. *See See In re Rambus Deriv. Litig.*, C-06-3513-JF Docket Sheet (Ex. 1). Presently, the Consolidated Derivative Actions is pending in the proposed transferee court, and the Consolidation Order expressly anticipates the consolidation of any additional derivative actions brought regarding these same transactions and occurrences. *See* Consolidation Order at ¶¶ 2,8 (Ex. 2). Additionally, PwC has been named as a defendant in the Consolidated Class Action and the Consolidated Pro Se Action, both of which are pending before Judge Fogel in the Northern District of California.

As described above, the related actions pending in the Northern District of California raise similar factual and legal issues as the instant case and revolve around the same transactions and events. *See supra* at 5. The fact that there is no derivative claim currently pending against PwC in the Northern District of California is immaterial to the analysis: to prevail in the instant action, Plaintiff would first have to prove many of the same things the California derivative plaintiffs will be seeking to establish – that there

was inappropriate backdating at Rambus, the extent of it, who knew or should have known of it, and whether and how the company was harmed by it. PwC's audits are likely to come up in the litigation of those actions, PwC auditors may be called upon to testify, and of course PwC is central to the allegations in the related securities law cases also pending in California.

In short, to litigate these cases in separate courts would be unduly burdensome on the relevant witnesses, would waste judicial resources, would increase the costs to the parties and would risk inconsistent results. *See, e.g., Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that Section 1404(a) was designed to prevent."). Under the "first filed" rule, therefore, transfer to the Northern District of California is appropriate.

### 2. The Desirability of Resolving Controversies Where They Occur

Case law also reflects a judicial preference that controversies are adjudicated in the place where they arose. *See Heyco, Inc. v. H. Kerry Hyman*, 636 F. Supp. 1545, 1548-49 (S.D.N.Y. 1986). Here, the large majority of the relevant facts occurred in the Northern District of California. The auditing services performed by PwC, which form the basis of Plaintiff's derivative claims, occurred in the Northern District of California. *See* Zwarn Decl. ¶¶ 2-4, 9-10. Rambus is located in the Northern District of California, and PwC's Rambus engagement was managed out of PwC's San Jose, California office. *Id.* The contracts between Rambus and PwC, which form the basis of Plaintiff's breach

of contract claim, were executed in California.  Zwarn Decl. ¶ 12.  In short, the facts and circumstances at issue here occurred not in the Southern District of New York but almost entirely in the Northern District of California.  Transfer to that District would permit them to be tried locally.

### 3.    Familiarity with Applicable Law

While familiarity with the applicable law may be given lesser weight in the analysis, *see Prudential Sec., Inc. v. Norcom Dev., Inc.*, No. 97 Civ. 6308, 1998 U.S. Dist. LEXIS 10569, at *17-18 (S.D.N.Y. Jul. 16, 1998), this factor also supports transfer to the Northern District of California.  *See DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000).

In this case, New York choice of law rules will apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Ferens*, 494 U.S. at 523 (When a case is transferred under Section 1404(a), the transferee court must apply the choice of law rules of the transferor court).  These rules provide that where there is a conflict between New York and California law, California law would apply to both Plaintiff's tort[3] and contract[4] claims.  To the extent the Northern District of California would be more familiar with California law, this factor would lean in favor of transfer.

---

[3] In tort cases, when there is a conflict between the law of the forum and the law of another state, New York choice of law rules call for the application of the law of the state with the greater interest in adjudication, as determined by the action's contacts with each state.  *DealTime.com*, 123 F. Supp. 2d at 757.  Where, as here, the parties are domiciled in different locations, the locus of the tort – in this case the Northern District of California – controls.  *Id; see also White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F. 3d 281, 284 (2d Cir. 2006).

[4] In contract cases, New York courts apply a center of gravity or grouping of contracts analysis. *See Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F. 3d 573, 583 (2d Cir. 2006).  Because the Northern District of California is clearly the "center of gravity" of this action, California law would apply to Plaintiff's breach of contract claim.

11

*v. Bartz*, No. 00 Civ. 5195 (DC), 2001 U.S. Dist. LEXIS 7168, at *12 (S.D.N.Y. Jun. 5, 2001). As described below, each of the private interest factors weighs in favor of transfer to the Northern District of California.

### 1.    Convenience of the Witnesses and Availability of Process

"The convenience of both party and non-party witnesses is a key factor in a 1404(a) analysis." *Dealtime.Com*, 123 F. Supp. 2d at 755; *see also Foothill Cap. Corp. v. Kidan*, No. 03 Civ 3976 (RMB), 2004 U.S. Dist. LEXIS 3634, at * 11 (S.D.N.Y. Mar. 8, 2004). The relevant inquiry focuses on the "materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance v. British Airways,* 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). Transfer is appropriate where all material witnesses reside in or near the transferee district. *See Ravenswood Investment Co., LP v. Bishop Capital Corp.*, No. 04 CV 9266 (KMK), 2005 U.S. Dist. LEXIS 1388, at *11-12 (S.D.N.Y. Feb. 1, 2005) (holding that inconvenience to potentially critical third party witnesses who live in or near the transferee district weighs strongly in favor of transfer); *Bombardier Capital Inc. v. Solomon*, 00 Civ. 0848 (RMB), 2000 U.S. Dist. LEXIS 16711, at *16-18 (S.D.N.Y. Nov. 17, 2000) (finding transfer appropriate where a majority of party and nonparty witnesses resided in the transferee

12

district).  The availability of compulsory process is an important consideration, especially where many material witnesses are non-party witnesses, because of the important interest in presenting live testimony at trial.  *See Int. Sec. Exchange*, 2007 U.S. Dist. LEXIS 38427, at *11-12.

The relevant questions of fact in this action will be whether backdating occurred; who, if anyone, knew of the alleged backdating; what, if any, actions were taken to conceal the backdating from individuals at Rambus and/or its public accountants; and what the legal consequences of these occurrences may be.  It is anticipated that the relevant witnesses for resolving these questions will be the Rambus directors, officers, and other employees who were involved in the stock option grant process; the PwC auditors who worked on the Rambus engagement; and the Rambus employees involved in preparing information for communicating with PwC in connection with its audits.  As these witnesses may also be called upon to testify in the Northern District of California actions on the same issues, to "compel such witnesses to travel to a second forum to give similar testimony on the same [issues] would be burdensome and inefficient for the parties, and would not promote judicial efficiency."  *Mastercard*, 2004 U.S. Dist. LEXIS 10906 at *26.

While the universe of potential individual witnesses is not currently known, a number of the most significant party witnesses currently reside in or within the subpoena power of the Northern District of California.  With respect to potential PwC witnesses, over the course of the years relevant to this dispute (*i.e.*, 1998 to 2006), four engagement partners from PwC worked on the Rambus audit:  Betty Jo Charles, James Atwell, Harish Khanna, and Dan Zwarn.  Zwarn Decl. ¶ 5.  Three of them (Ms. Charles, Mr. Khanna and

Mr. Zwarn) remain employed by PwC. Zwarn Decl. ¶¶ 6, 8, 9. Ms. Charles and Mr. Khanna reside within the Northern District of California, and Mr. Zwarn resides in the District of New Jersey. *Id*. To the best of PwC's knowledge, Mr. Atwell also resides in the Northern District of California, and would therefore be subject to compulsory process there. *Id*. at ¶ 7.

With respect to potential Rambus witnesses, Rambus' principal and only place of business is located in the Northern District of California. Complaint at ¶¶ 10, 12. Three current employees of Rambus were employed during and implicated in the purported back-dating scheme. *See* SLC Report at 3-4 (Ex. 5).

With respect to the plaintiff, it is clear from the face of the Complaint that he is a resident of neither the Northern District of California nor the Southern District of New York. His verification of the Complaint reflects that he is a resident of Banyoles, Spain. Moreover, he is not anticipated to be a relevant witness on any question other than his own standing to bring the claims asserted here. *See Royal & Sunalliance,* 167 F. Supp. 2d at 577 (noting that the relevant consideration is the materiality of the witness's testimony). Although New York is closer to Spain than is California, it is certainly less inconvenient for a single witness of at most marginal relevance to travel to California than for the number of party and nonparty witnesses within the Northern District of California to travel to the Southern District of New York. *See Bombardier Capital*, 2000 U.S. Dist. LEXIS 16711 at *16.

### 2.    The Locus of Operative Facts

Courts have also recognized that transfer is appropriate where the locus of operative facts is in the transferee district. *See Ravenswood*, 2005 U.S. Dist. LEXIS 1388

at *17 ("[W]here the operative facts are concentrated in a specific district other than the district in which plaintiff has sued, the action should be transferred to that district, notwithstanding plaintiff's choice of forum.").

The operative facts here occurred overwhelmingly in the Northern District of California. PwC's agreement with Rambus, which forms the basis of Plaintiff's contract claim, was negotiated, drafted and executed in the Northern District of California. Zwarn Decl. ¶ 12. The work performed by PwC under that contract, which forms the basis of the plaintiff's professional negligence/malpractice claim, occurred in the Northern District of California. *Id*. at ¶¶ 2-4, 9-10. PwC is not aware of any operative fact which occurred in the Southern District of New York. This factor, therefore, also weighs in favor of transfer.

### 3.    <u>Convenience of the Parties</u>

Courts also look to the residence of the parties to determine which forum is most convenient. *See Foothill*, 2004 U.S. Dist. LEXIS 3634 at * 10. To litigate this action in the Northern District of California would be far more convenient for PwC, as the relevant acts occurred there and a number of significant PwC witnesses currently reside there. *See generally* Zwarn Decl. The Northern District of California would also be more convenient for Rambus, as its principal place of business is in that District. Plaintiff, a citizen and resident of Spain, does not reside in either District. This factor therefore also weighs in favor of transfer. *See Bombardier Capital*, 2000 U.S. Dist. LEXIS 16711 at *16 (finding transfer appropriate to the state of the defendant's residence where the plaintiff resided in neither the transferee nor the transferee district).

15

**4.     Location of Relevant Documents**

The location of relevant documents and ease of access to sources of proof "is clearly an important consideration in motions to transfer." *Ravenswood*, 2005 U.S. Dist. LEXIS 1388, at *19. Although documents can be shipped from state to state, the location of relevant documents in the transferee district favors transfer. *In re Stillwater Mining Co. Sec. Litig.*, No. 02 Civ. 2806, 2003 U.S. Dist. LEXIS 7983, at *12 (S.D.N.Y. May 12, 2003).

The relevant documents here were in large part created in the Northern District of California and reside there. Zwarn Decl. ¶¶ 3-4, 10-11. While copies of many documents can of course be found beyond the Northern District of California, including in this District, the most comprehensive sets and the originals still are located in California. *Id.* at ¶ 11. Given modern technologies, this is not the most significant factor, but if anything it further points in favor of transfer.

**5.     Plaintiff's Choice of Forum Should Be Accorded Little Weight**

Although a plaintiff's choice of forum is generally entitled to a presumption of validity, this choice is accorded little weight when the plaintiff does not reside in the forum, *see, Posven*, 303 F. Supp. 2d at 405; there is minimal connection between the forum and the facts at issue in the case, *see Ravenswood*, 2005 U.S. Dist. LEXIS 1388 at *17, 23; and the choice of forum is fortuitous, as it is in a derivative action, *see Seinfeld,* 2001 U.S. Dist. LEXIS 7168, at *11-12.

Here, Plaintiff is a resident of Spain, and there is no indication in the complaint of any connection between Plaintiff and New York or between this litigation and New York. The only apparent connection (and, we submit, an irrelevant one) between this action and

Plaintiff's chosen forum is that PwC is headquartered here, which is generally viewed as insufficient to preclude transfer. *See Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (noting that a "court need not give great weight to plaintiff's choice of forum" where the only connection between the action and the forum is that the defendant does business in the forum). Plaintiff's choice of forum is therefore not entitled to substantial weight. *See Schultze v. DaimlerChrysler Corp.*, No. 06 Civ. 1883 (NRB), 2006 U.S. Dist. LEXIS 85273, at * 12-13 (S.D.N.Y. Nov. 16, 2006).

Moreover, "in a derivative action, the weight given [to] plaintiff's choice of forum is considerably weakened because the plaintiff is only one of many potential plaintiffs, all of whom could with equal show of right go into their many home courts." *See Strauss v. West Highland Capital*, No. 00 Civ. 01184 (GEL), 2000 U.S. Dist. LEXIS 14937, at *5 (S.D.N.Y. Oct. 6, 2000). Here, Rambus would actually be the truly interested plaintiff, and presumably Rambus would much prefer to litigate the case in the Northern District of California where it is based and where substantial related litigation is already pending.

## CONCLUSION

Based on the foregoing, defendant PricewaterhouseCoopers LLP respectfully requests that the Court transfer this action to the U.S. District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

DATED: September 25, 2007                    DAVIS POLK & WARDWELL

By: _James H.R. Windels_____

James H.R. Windels (JW 9726)
M. Elizabeth Parr (MP 1979)
Brooke Grossman (BG 4749)
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Attorneys for Defendant
PricewaterhouseCoopers LLP

18