# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERBERT FRANCL, Derivatively on Behalf of RAMBUS INC., <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, <br><br> Defendant, <br><br> -and- <br><br> RAMBUS INC., a Delaware Corporation. <br><br> Nominal Defendant. | No. 07 Civ. 7650 (GBD) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO PRICEWATERHOUSECOOPERS LLP'S
<u>MOTION TO TRANSFER THE ACTION</u>**

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................. 1

**BACKGROUND** ......................................................................................................................... 2

    **A.**    **Summary of the Complaint Against PwC** ................................................................ 2

    **B.**    **The California Derivative Complaint Against Officers and Directors** ....................... 4

    **C.**    **The Class Action Settlement Released Claims, Without Discovery, Against PwC** ..... 5

**LEGAL STANDARDS** ................................................................................................................. 6

**ARGUMENT** ................................................................................................................................ 7

    **A.**    **Venue In The Southern District Of New York Is Proper** ............................................ 7

    **B.**    **Efficiency and Interest of Justice Do Not Favor Transfer** .......................................... 7

        **1.**    **Familiarity With Applicable Law** ................................................................... 9

        **2.**    **Availability Of Process** .................................................................................... 9

        **3.**    **Convenience To Witnesses** ............................................................................. 10

        **4.**    **Relative Ease to Sources of Proof** .................................................................. 11

        **5.**    **Convenience Of Parties** .................................................................................. 12

        **6.**    **Locus Of Operative Facts** ............................................................................... 13

        **7.**    **Plaintiff's Choice Of Forum** .......................................................................... 13

    **C.**    **PwC' Time To Respond Should Not Be Stayed Pending Its Motion** ....................... 14

**CONCLUSION** ............................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**

*APA Excelsior III v. Premier Technologies, Inc.*,
  49 F. Supp. 2d 664 (S.D.N.Y. 1999) .................................................................................. 6

*Breeden v. Tricom Business Systems, Inc.*,
  244 F. Supp. 5 (S.D.N.Y. 2003) ........................................................................................ 10

*Coker v. Bank of America*,
  984 F. Supp. 757 (S.D.N.Y. 1997) ............................................................................. 10, 11

*DiRenzo v. Philip Serv. Corp.*,
  294 F.3d 21 (2d Cir. 2002) ............................................................................................... 14

*Dwyer v. General Motors Corp.*,
  853 F. Supp. 690 (S.D.N.Y. 1994) ......................................................................... 9, 10, 13

*Excelsior Designs, Inc. v. Sheres*,
  291 F. Supp. 2d 181 (E.D.N.Y. 2003) .............................................................................. 10

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
  415 F. Supp. 2d 370 (S.D.N.Y. 2006) ................................................................................ 8

*FVL Inc. v. Unified School Dist. No. 204*,
  839 F. Supp. 1307 (N.D. Ill. 1993) ................................................................................... 10

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947) ........................................................ 13

*Hernandez v. Blackbird Holdings, Inc.*,
  No. 01 Civ. 4561, 2002 U.S. Dist. LEXIS 2999 (S.D.N.Y. Feb. 25, 2002) .................. 6, 11

*Lesser v. Camp Wildwood*,
  No. 01 Civ. 4209, 2002 U.S. Dist. LEXIS 14025 (S.D.N.Y. July 31, 2002) ............... 10, 13

*Manufacturers Hanover Trust Co. v. Palmer Corp.*,
  798 F. Supp. 161 (S.D.N.Y. 1992) ..................................................................................... 6

*Mastercard Int. Inc. v. Lexcel Solutions, Inc.*,
  No. 03 Civ. 7157, 2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. June 18, 2004) ..................... 8

*Schieffelin & Co. v. The Jack Company of Boca, Inc.*,
  725 F. Supp. 1314 (S.D.N.Y. 1989) ................................................................................... 7

*S-FER International, Inc. v. Paladion Partners, Ltd.*,
   906 F. Supp. 211 (S.D.N.Y. 1995) ................................................................................... 9, 12

*Stewart Organization, Inc. v. Ricoh Corp.*,
   487 U.S. 22, 101 L.Ed. 2d 22, 108 S.Ct. 2239 (1988) ................................................................ 6

*Third Avenue Trust v. Suntrust Bank*,
   163 F. Supp. 2d 215 (S.D.N.Y. 2001) ..................................................................................... 2

*Weiss v. Columbia Pictures Television, Inc.*,
   801 F. Supp. 1276 (S.D.N.Y. 1992) ........................................................................................ 2

*Williams v. City of New York*,
   No. 03 Civ. 5342, 2006 U.S. Dist. LEXIS 6740 (S.D.N.Y. Feb. 21, 2006) ............................... 7

**Statutes**

28 U.S.C. §1404(a) ........................................................................................................................ 6

iii

Plaintiff Herbert Francl submits this memorandum of law in opposition to the motion of Defendant PriceWaterhouseCoopers LLP ("PwC" or "Defendant") and the joinder by nominal defendant Rambus, Inc. ("Rambus" or the "Company") to transfer this action from the United States District Court for the Southern District of New York to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Plaintiff also requests that the Court reconsider its order, dated September 28, 2007, staying Defendants' time to respond to Plaintiff's Complaint pending the motion to transfer, and instead order PwC to respond.

**PRELIMINARY STATEMENT**

On August 28, 2007, Plaintiff initiated this unique action on behalf of the Company. Mr. Francl had previously made a demand on the Company's board of directors to investigate and pursue claims against professionals who are responsible for the Company's damages. Unlike any other derivative plaintiff, Mr. Francl seeks a recovery for the Company from PwC, the Company's New York-based auditor, related to its audits and interim reviews of the Company's annual and quarterly financial statements. Those financial statements have now been restated to correct for admitted improper accounting for stock options that occurred on PwC's watch.

PwC's motion (which Rambus joined) to transfer this action from PwC's home forum to California should be denied. California is where another derivative action between different parties is pending. There, the dispute involves different facts, different defendants, and different claims. That much is clear from the face of the operative pleading on file in California. Plaintiff's choice of forum is not met with or overcome by a clear and convincing showing that the convenience of parties and witnesses favors transfer.[1] Of the factors considered by courts in this

---

[1] Although no discovery has been taken in this case, it is likely that the engagement agreements or other agreements between the Company and PwC include a choice of forum clause. If the Company and PwC have such agreement(s) containing a clause favorable to the

jurisdiction deciding a motion to transfer, all either weigh against -- or are neutral regarding -- transfer.

Further, the dispute in PwC's proposed transferee court is at risk of termination in the near future. On October 5, 2007, pursuant to the report and recommendations of the Special Litigation Committee formed by the Company's board, the Company moved the California court to terminate the litigation and the hearing on Rambus' motion is noticed for January 18, 2008.[2]

In short, the Court should deny Defendants' motion to transfer.

## BACKGROUND

A. **Summary of the Complaint Against PwC**

Plaintiff alleges claims against PwC on behalf of the Company for breach of contract and professional negligence/malpractice. (Verified Derivative Complaint ("Complaint"), ¶¶8, 15, 130-139).

The well-pleaded Complaint alleges, in part:

- Plaintiff made a demand on the Company's board of directors to investigate and bring claims against responsible professionals (id. ¶2);

- Plaintiff's demand was refused (id., ¶¶3, 122-124);

- PwC has its principal place of business in New York City (id., ¶¶12, 15);

---

PwC motion and the joinder by Rambus, PwC and the Company would have highlighted that fact in their respective motion and joinder. If a Section 1404(a) motion involves a forum selection clause, the district court considers whether the clause is valid and then whether the clause should be enforced. *Third Avenue Trust v. Suntrust Bank*, 163 F. Supp. 2d 215, 220 (S.D.N.Y. 2001). "The burden of the latter inquiry falls on the moving party, who must 'demonstrate exceptional facts explaining why he should be relieved from his contractual duty.'" *Id.* (quoting *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992)).

[2] *See* Nominal Defendant Rambus Inc.'s Motion To Terminate Derivative Litigation Pursuant To The Report Of The Special Litigation Committee, attached as Ex. A to Declaration of Brian Murray ("Murray Decl."), submitted herewith.

2

- PwC conducted audits and interim reviews of the Company's financial statements during the Relevant Period (id., ¶¶15, 44, 79-88);

- PwC audited the Company's internal controls for fiscal years ending 2004 and 2005 (id.);

- PwC also provided acquisition services, tax consultations, tax return preparation, technical advice and Form S-8 services during the Relevant Period (id.);

- PwC issued unqualified audit opinions on the Company's financial statements and internal controls during the Relevant Period (id., ¶¶5, 79-88);

- PwC did not, as represented in its unqualified audit opinions, conduct its audits and reviews in accordance with applicable professional standards (id., ¶¶6, 101-119);

- The Company's financial statements during the Relevant Period did not in fact comport with Generally Accepted Accounting Principles ("GAAP") (id., ¶¶89-97);

- During the spring of 2006, the Company hired consultants and in October 2006 admitted that in contrast to PwC's unqualified audit opinions the Company's audited financial statements for its fiscal years ended 2003 – 2005 and its interim quarterly reports during those fiscal years and for 1Q06 did not comport with GAAP, should not be relied on and would be restated (id., ¶¶96-97);

- The Company also admitted that in contrast to PwC's unqualified audit opinions the Company likely had material weaknesses in its internal controls as of December 31, 2005 (id., ¶97);

- PwC was in a position to know about improper accounting that necessitated the restatements and corrective disclosures (id., ¶¶101-119);

- The Company formed a Special Litigation Committee ("SLC") (id., ¶126);

3

- The Company's SLC issued a report on or around August 23, 2007 (the "SLC Report"), but the SLC Report did not disclose that the SLC conducted any investigation into outside professionals' culpability for events connected with the restatements or that it pursued any claims against PwC (see id., ¶¶126, 127; see also Declaration of Brooke Grossman, filed with this Court on or around September 25, 2007 ("Grossman Decl."), Ex. 5);

- PwC's conduct caused substantial damage to the Company (Complaint, ¶¶120, 134, 138).

**B.    The California Derivative Complaint Against Officers and Directors**

In California, several derivative actions were consolidated into *In re Rambus, Inc. Derivative Litigation*, C-05-3513-JF ("California derivative action").[3] None of these derivative actions named PwC as a party defendant.

The California derivative action alleges, in part:

- Plaintiffs in California did not make a demand on the Company's board of directors (Grossman Decl., Ex. 7, ¶101)

- Defendants are current and former officers and/or directors of the Company (id., ¶¶14-32);

- Defendants breached fiduciary duties by backdating options granted to the Company's former CEO and other executives (id., ¶¶17, 41-54);

- Defendants engaged in improper insider trading (id., 55-91, 94-97);

- Defendants caused the Company to record backdated stock options in violation of Generally Accepted Accounting Principles ("GAAP") (id., ¶¶7, 55-58);

---

[3] The Amended Consolidated Shareholder Derivative Complaint filed on November 3, 2006 in the California derivative action is attached at the Grossman Decl., Exhibit 7.

- Defendants caused the Company to disseminate false and misleading financial statements to the public (id.);

- Defendants conduct damaged the Company (id., ¶¶92-93);

- Defendants are liable to the Company for breaches of fiduciary duty and aiding and abetting, violations of the federal securities laws, violations of the California Corporations Code, abuse of control, gross mismanagement, constructive fraud, accounting, corporate waste, unjust enrichment, rescission and breach of contract (id., ¶¶106-170).[4]

On August 23, 2007, the SLC determined that it would terminate the California action, with the exception of claims against one individual. See Grossman Decl, Ex. 5. PwC is not a party to that litigation, and the SLC did not address PwC's conduct and potential claims even though Plaintiff here made a demand on the Company's board on August 30, 2006 that the Company, *inter alia*, commence litigation against professionals (in this instance PwC) responsible for the Company's damages. On October 18, 2006 the Board established the SLC. While Plaintiff here had made written demand some six weeks prior, the SLC Report is silent with regard to PwC. On October 5, 2007, Rambus filed its motion to terminate the California litigation pursuant to the SLC Report, except as to one former officer.

C.  **The Class Action Settlement Released Claims, Without Discovery, Against PwC**

On September 7, 2007, the Company filed its Form 8-K with the Securities and Exchange Commission disclosing that the securities class action in California had settled in principle for

---

[4] In addition, a *pro se* case, *Kelley v. Rambus et al.*, C-07-1238-JF, alleges 1) violations of Sections 10(b), 14(a), 18(a) and 20(a) of the Exchange Act, 2) violations of Sections 11 and 12 of the Securities Action of 1933, 3) common law fraud under California Civil Code Sections 1709, 1710, and 1753 4) aiding an abetting negligent misrepresentation, 5) violations of Sections 25401, 25402, and 25403(b) of the California Corporations Code, and 6) violations of Sections 17200 and 17500 of the California Business and Professions Code.

5

$18 million. *See* Murray Decl, Ex. B. As this case had not yet survived a motion to dismiss, the discovery stay mandated by the Private Securities Litigation Reform Act of 1995 was in effect. Thus, the securities class action against PwC and other defendants is effectively dormant and pending court approval of the settlement.

## LEGAL STANDARDS

Pursuant to 28 U.S.C. 1404(a), a district court may transfer venue, in the interest of justice "[f]or the convenience of parties and witnesses." 28 U.S.C. §1404(a).

This statute gives district courts discretion to transfer cases according to "an individualized case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In determining whether to grant a motion to transfer, a court must consider "'(1) the place where the operative facts occurred; (2) the convenience to the parties; (3) the convenience of the witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice.'" *Hernandez v. Blackbird Holdings, Inc.*, No. 01 Civ. 4561, 2002 U.S. Dist. LEXIS 2999, at **2-3 (S.D.N.Y. Feb. 25, 2002) (quoting *APA Excelsior III v. Premier Technologies, Inc.*, 49 F. Supp. 2d 664, 667 (S.D.N.Y. 1999)).

The movant bears the burden of justifying a transfer of venue. *Id.* "[T]he presumption against transferring venue is a strong one, and 'the rule in this circuit is that plaintiff's choice of forum will not be disturbed unless the movant shows that the balance of convenience and justice weighs heavily in favor of transfer.'" *Id.*, at **3-4 (quoting *Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161, 164 (S.D.N.Y. 1992). In order for the movant to overcome its

burden, it "must demonstrate through clear and convincing evidence that the interests of justice require transfer to a venue other than the one chosen by the plaintiff." *Id.*, at *4.

As discussed below, PwC's motion should be denied.

## ARGUMENT

**A.      Venue In The Southern District Of New York Is Proper**

PwC and Rambus concede that venue in this forum is proper. PwC and Rambus merely perceive that California is more advantageous to them than is PwC's home forum. As previously noted, the Company's board has caused the Company to file a motion to terminate the California derivative action based on the SLC Report. But, as more fully discussed below, PwC and Rambus fail to meet their significant burden of establishing by a clear and convincing showing that transfer to California is warranted. When a transfer motion is gauged to merely inconvenience the other party, courts should not order transfer. *Schieffelin & Co. v. The Jack Company of Boca, Inc.*, 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). That is the situation here.

**B.      Efficiency and Interest of Justice Do Not Favor Transfer**

The interests of justice and judicial economy weigh against a transfer.

As described above, the California derivative action is devoid of any allegations and claims directed toward PwC's conduct and culpability. Instead, the California plaintiffs focus on alleged improper insider trading by certain of the Company's officers and/or directors and seek the return of those proceeds. Here, in contrast, the focus is on PwC's audits. There will be little if any overlap between the cases here against PwC and the case in California against certain officers and directors.

PwC's authorities do not support its public interest argument. In *Williams v. City of New York*, No. 03 Civ. 5342, 2006 U.S. Dist. LEXIS 6740 (S.D.N.Y. Feb. 21, 2006), the court

7

reasoned that discovery in two competing cases in different fora would likely overlap, so a transfer served judicial economy. "The Southern and Eastern District actions encompass similar legal and factual issues, involve the same plaintiff, are both suits against members of DOCS, and the City anticipates calling the same witnesses in its defense in both actions." *Id.* at *10. In *Mastercard Int. Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157, 2004 U.S. Dist. LEXIS 10906, at *26 (S.D.N.Y. June 18, 2004), the transferor court observed: "[i]t would be inefficient and a waste of judicial resources to subject the same parties to suit over interconnected claims concerning identical technology and underlying disputes in two separate fora." In *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006), the transferor court observed that the same affiliated plaintiffs were already litigating against the same California-based defendant in California upon the request of one of the plaintiffs.

This case does not remotely resemble those highlighted by PwC. Here, unlike *Williams*, there are not two sets of cases between the same parties alleging the same claims pending in two courts. Here, unlike *Mastercard*, there are not two sets of cases between the same parties involving interconnected claims pending in two courts. And here, unlike *Fuji*, there are not two sets of cases between the same parties involving similar claims pending in two courts. Moreover, unlike the plaintiff in *Fuji*, Plaintiff here has not previously sought to litigate against the same defendant in the transferee court.

PwC's attempt to liken this case to the California derivative action, positing that Plaintiff need prove that there was improper option backdating at the Company, is unpersuasive. The fact of improper backdating is admitted. The fact of improper accounting is admitted. The fact that the Company's financial statements did not comport with GAAP is admitted. Indeed, corrective

accounting and related disclosures have been made to the SEC. The parties are different. Accordingly, the first filed rule does not apply.

1. **Familiarity With Applicable Law**

This factor weighs against transfer.

PwC argues without support that New York choice of law rules apply, there is a conflict between New York and California law governing the alleged claims, so California law governs those claims. PwC stretches.

Even if the law of another jurisdiction governs the claims here, this factor is of little consequence to a transfer motion. *Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994). More particularly, "[i]f New York's choice of law rules provide that California law is the appropriate law to apply […] this Court is perfectly capable of applying it." *S-FER International, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215-16 (S.D.N.Y. 1995).

In any event, Plaintiff does not accept PwC's naked assertion that in the end California law applies. Discovery will reveal the engagement agreements and possibly indemnification and other agreements between the Company and PwC. Plaintiff expects that some or all of the agreements have choice of law and forum selection clauses that require the application of New York law to disputes between them, and that those disputes be resolved in New York. Plaintiff presumes so because if they specified California as the forum and law, then PwC would have cited to it with great emphasis in its brief.

2. **Availability Of Process**

This factor does not favor transfer.

Presumably, the parties to this lawsuit will appear to testify without compulsion. Witnesses who are employees of PwC are presumed to be amenable to appearing on PwC's

9

behalf. *Lesser v. Camp Wildwood*, No. 01 Civ. 4209, 2002 U.S. Dist. LEXIS 14025, at *12 (S.D.N.Y. July 31, 2002). The availability of compulsory process is generally not considered for witnesses in control of the party calling them. *FVL Inc. v. Unified School Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993). PwC identifies just one potential third-party witness, James Atwell, who might be compelled to testify. *See* Declaration of Daniel Zwarn, dated September 25, 2007, at 2. However, PwC provides no affidavits of witnesses stating their unwillingness to appear. As to out-of-state witnesses, their "testimony deemed necessary in this case could be offered to the jury via deposition." *Dwyer*, 853 F. Supp. at 694.

### 3.   Convenience To Witnesses

This factor also weighs against transfer.

The convenience of witnesses is considered the most important factor in considering whether to upset a plaintiff's choice of forum. *Coker v. Bank of America*, 984 F. Supp. 757, 765 (S.D.N.Y. 1997); *Breeden v. Tricom Business Systems, Inc.*, 244 F. Supp. 5, 10 (S.D.N.Y. 2003). The party seeking a transfer under Section 1404(a) must support its motion with a detailed list in affidavit form. *Id.*; *Excelsior Designs, Inc. v. Sheres,* 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003). PwC submitted the Zwarn Declaration. Rambus submitted nothing in support of its joinder. Mr. Zwarn, the current PwC engagement partner responsible for the Rambus account, listed several individuals who he states were involved in historical audits of the Company. He does not say, however, that PwC intends to call these witnesses or describe the areas of their testimony. Mr. Zwarn's declaration and PwC's brief fall short of meeting a movant's burden on this factor. Noticeably absent from the Zwarn Declaration is any mention of Company witnesses, suggesting PwC will not require those individuals to appear here for purposes of defending claims made in this case. PwC only considers its current or former partners to be key to its defense. It is, of

course, well-recognized that courts in this jurisdiction consider the materiality, not the quantity, of witnesses listed in a movant's affidavit to be important in the context of a transfer motion.

In Plaintiff's view, Mr. Zwarn is likely to be the most material witness.  He resides in New Jersey.  *See* Zwarn Decl., ¶ 9.  As the PwC Engagement Partner responsible for the Company's account, Mr. Zwarn was and is responsible for the audit work and would have a working current knowledge of the most recent and past audit work performed for the Company. Plaintiff expects that Mr. Zwarn will have personal knowledge about audit work done before he became Engagement Partner, since an engagement partner would need to be familiar with historical audits and has typically worked on the audit team assigned to a client in a junior staff or management capacity before assuming engagement responsibility.

In addition, Plaintiff expects that various professionals located in PwC's New York offices will be material witnesses.  They are expected to testify about PwC's audit manual as it relates to audit testing, accounting and tax issues related to stock options, and any specialized knowledge provided to staff auditors in the field.

**4.      Relative Ease to Sources of Proof**

This factor does not favor transfer.

PwC argues that because many relevant documents were created in California, that fact supports transfer.  PwC is wrong.

As this Court has observed before, where relevant documents rest in another jurisdiction, "this factor is neutral 'in today's era of photocopying, fax machines and Federal Express.'" *Hernandez*, 2002 U.S. Dist. LEXIS 2999, at *6 (quoting *Coker*, 984 F. Supp. at 766).

Here, some of the relevant books and records are in New York (PwC's headquarters), some are in California (PwC's local office), and some are in Spain (Plaintiff's records). A

substantial portion of documents deemed relevant by the Audit Committee are in fact in electronic form and therefore easily transportable. *See* Grossman Decl., Ex. 5 (SLC Report) at 14 ("With the assistance of legal counsel…and forensic accountants…, the Audit Committee identified, collected, and reviewed over 1.5 million electronic documents and hundreds of thousands of pages of hard-copy files from 39 current and former employees and directors"); *id.* at 15 ("With respect to electronic documents, the Audit Committee imaged and searched the hard drives of 27 individual custodians and collected and reviewed documents from the shared drives of the Company's human resources, finance, and legal departments.  Further, the Audit Committee collected electronic versions of specific categories of documents, including Unanimous Written Consents, Board of Directors meeting minutes, Compensation Committee meeting minutes, Stock Option Committee approval memoranda, and SEC forms 3, 4, and 5 …").  These Company documents were all available to PwC during its audits. Furthermore, the documentary evidence from all parties and non-party witnesses is easily copied and shipped to counsel. Thus, the documents generated by PwC related to Rambus audits are equally accessible in either San Jose or New York.  *See* Zwarn Decl., ¶ 11.

In such circumstances, PwC has not carried its burden.  *S-Fer Int'l*, 906 F. Supp. at 215 ("A transfer to California would do no more than shift the burden of transporting documents from one coast to the other.").

### 5. Convenience Of Parties

This factor weighs against transfer.

As far as the trial of this case is concerned, no party will be inconvenienced.  Plaintiff will, as he expects, travel to New York.  PwC will remain here, in its home forum.  There is no inconvenience to PwC.  Accordingly, PwC has not met its burden on this factor

The Court may also consider the relative means of the parties. *Dwyer*, 853 F. Supp. at 693. Plaintiff is a small individual investor who is suing one of the world's largest accounting firms. To force Plaintiff to extend his travel across an additional continent and retain local counsel in California merely increases the burdens he already faces. PwC could and should defend in New York.

### 6.  Locus Of Operative Facts

This factor does not favor either venue.

The operative facts of this case occurred in at least both New York and California. If PwC's position were correct, and it is not, then no contract or tort claim could ever be brought outside of the forum in which much of the offensive conduct occurred and resulting harm is felt. That cannot be the law,, and it is not. *See e.g.*, *Dwyer*, 853 F. Supp. at 694 (denying motion to transfer to Maryland where accident and death occurred and where evidence was located in several parts of the country). Not all sources of proof in this case are located in California. Notably, important witnesses, including Mr. Zwarn and professionals in the New York office, reside in or very close to this forum. In addition, documentary evidence concerning PwC's internal audit guidance, like the firm's audit manuals, that comprise the relevant professional standards against which to gauge PwC's conduct, reside in this forum.

### 7.  Plaintiff's Choice Of Forum

This factor weighs against transfer.

The plaintiff's choice should rarely be disturbed unless other factors weigh strongly in favor of the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Lesser*, 2002 U.S. Dist. LEXIS 14025, at *7. "In fact, a court should begin with the assumption that a 'plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it

less deference.'" *Id.*, at \*\*7-8 (quoting *DiRenzo v. Philip Serv. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002)). Representative plaintiffs are not deprived of deference to their choice of forum. *DiRenzo*, 294 F.3d at 28.

While the weight of this factor against transfer is not as heavy as it would be if Plaintiff resided in New York, Plaintiff's choice of this forum nonetheless should not be disturbed. As alleged, PwC is headquartered in New York and has received substantial compensation here in connection with services provided to the Company. (Complaint, ¶¶12, 15) In addition, Plaintiff anticipates that discovery will show that issues arose in the context of PwC's provision of those services that required consultations with specialists or experts located in PwC's New York headquarters. Thus, New York is not completely unrelated to this action. In addition, the factors discussed herein do not weigh heavily in PwC's favor. Plaintiff's choice of forum should not be disturbed; the motion to transfer should be denied.

**C.      PwC' Time To Respond Should Not Be Stayed Pending Its Motion**

On September 28, 2007, this Court approved PwC's request to extend their time to respond to Plaintiff's Complaint until 20 days after the Court's resolution of the motion to transfer. Plaintiff submits that this extension is unnecessary, and requests the Court to order PwC to respond to the Complaint. As shown above, there is little likelihood of success for PwC's venue motion.

It is inevitable that PwC shall have to respond to Plaintiff's complaint, even if PwC were to succeed on its motion to transfer. The Federal Rules of Civil Procedure call for the swift adjudication of all matters. Postponing PwCs' answer *sine die* needlessly prolongs this litigation. The substance of PwCs' responses shall likely remain the same, whether or not this case is ultimately litigated in California or New York. This delay serves no purpose and will not

further the litigation. Staying this case indefinitely while a venue motion is pending and preventing a swift adjudication on the merits serves no purpose other than delaying justice. Accordingly, Plaintiff requests that this Court order PwC to respond.

## CONCLUSION

For the foregoing reasons, PwCs motion to transfer this case to the Northern District of California should be denied, and this Court order PwC to respond.

DATED: October 23, 2007                     **MURRAY, FRANK & SAILER LLP**


By: _____/s/_____
      Brian P. Murray (BM 9954)
      Gregory B. Linkh (GL 0477)
275 Madison Ave., 8th floor
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (2120 682-1892

John G. Emerson, Jr.
Scott Poynter
Christopher D. Jennings
**EMERSON POYNTER**
The Museum Center
500 President Clinton Ave, Ste 305
Little Rock, AR 72201
Telephone: (501) 907-2555
Facsimile: (501) 907-2556

**Attorneys for Plaintiff**

15

## **DECLARATION OF SERVICE**

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 23rd day of October, 2007, I caused a true and correct copy of the foregoing document to be served, by ECF and e-mail, to the following:

James H.R. Windels, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
e-mail: james.windels@dpw.com

**Attorneys for Defendant PriceWaterhouseCoopers LLP**


Gideon Schor, Esq.
WILSON SONSINI GOODRICH & ROSATI P.C.
1301Avenue of the Americas
New York, NY 10019
e-mail: gschor@wsgr.com

Ignacio Salceda, Esq.
WILSON SONSINI GOODRICH & ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
e-mail: ISalceda@wsgr.com

**Attorneys for Nominal Defendant Rambus, Inc.**


_____/s/_____
Gregory B. Linkh (GL-0477)