Table of Contents

The components of the net deferred tax assets are as follows:

| (in thousands) | December 31, | |
| --- | --- | --- |
| | 2006 | 2005<br>As restated (1) |
| Deferred tax assets: | | |
| Deferred revenue | $    845 | $    1,315 |
| Depreciation and amortization | 22,908 | 26,781 |
| Other liabilities and reserves | 11,714 | 4,288 |
| Employee stock-based compensation | 694 | 894 |
| Deferred equity compensation | 33,669 | 37,031 |
| Net operating loss carryover | 15,792 | 10,071 |
| Tax credits | 23,959 | 21,520 |
| Total deferred tax assets | $109,581 | $  101,900 |

(1)   See Note 3, "Restatement of Consolidated Financial Statements," of the Notes to Consolidated Financial Statements.

Management periodically evaluates the realizability of the deferred tax assets based on all available evidence, both positive and negative. Future taxable income and other factors determine how much benefit Rambus ultimately realizes from deferred tax assets. If the Company's estimate of future taxable income or the overall expected realizability of the deferred tax assets changes, a valuation allowance may have to be recorded which could materially impact Rambus' financial position and results of operation.

As of December 31, 2006, Rambus has federal and state net operating loss carryforwards for income tax purposes of $103.8 million and $91.7 million, respectively, which expire from 2014 through 2026. As of December 31, 2006, Rambus has federal and state research and development tax credit carryforwards for income tax purposes of $13.5 million and $6.4 million, respectively. The federal research and development tax credit carryforwards expire from 2012 through 2026 and the state tax credit can be carried forward indefinitely.

Pursuant to Footnote 82 of SFAS No. 123(R), tax attributes related to stock option windfall deductions should not be recorded until they result in a reduction of cash taxes payable. On a prospective basis, Rambus no longer includes net operating losses attributable to stock option windfall deductions as components of its gross deferred tax assets. Therefore, its unrealized federal and state net operating losses excluded for the year ended December 31, 2006 are $62.9 million and $65.2 million, respectively. The benefit of these net operating losses will be recorded to equity when they reduce cash taxes payable.

At December 31, 2006, no deferred taxes have been provided for any portion of the approximately $1.1 million of undistributed earnings of the Company's international subsidiaries, since these earnings have been, and under current plans will continue to be, permanently reinvested in these subsidiaries. The Company's operations in India currently operate under a tax holiday, which will expire in 2009.

Page 138 of 170

Table of Contents

For U.S. federal tax purposes, the Company is generally no longer subject to tax examinations for years prior to March 31, 1998. For California tax purposes, the Company is generally no longer subject to tax examinations for years prior to March 31, 1999.

In the event of a change in ownership, as defined under federal and state tax laws, Rambus' net operating loss and tax credit carryforwards could be subject to annual limitations. The annual limitations could result in the expiration of the net operating loss and tax credit carryforwards prior to utilization.

## 12. Earnings (Loss) Per Share

Earnings (loss) per share is calculated in accordance with, Statement of Financial Accounting Standard No. 128, "Earnings Per Share" ("SFAS 128"). Basic earnings (loss) per share is calculated by dividing the earnings (loss) by the weighted average number of common shares outstanding during the period. Diluted earnings (loss) per share is calculated by dividing the earnings (loss) by the weighted average number of common shares and potentially dilutive securities outstanding during the period. Potentially dilutive common shares consist of incremental common shares issuable upon exercise of stock options, employee stock purchases, restricted stock and restricted stock units and shares issuable upon the conversion of convertible notes. The dilutive effect of the convertible notes is calculated under the if-converted method. The dilutive effect of outstanding shares is reflected in diluted earnings per share by application of the treasury stock method. This method includes consideration of the amounts to be paid by the employees, the amount of excess tax benefits that would be recognized in equity if the instruments were exercised and the amount of unrecognized stock-based compensation related to future services. The impact of the CSEs (See Note 9, "Stockholders' Equity)." has been excluded from all periods because the CSEs are not expected to vest. No potential dilutive common shares were included in the computation of any diluted per share amount when a net loss was reported.

The following table sets forth the computation of basic and diluted earnings per share:

| (in thousands, except per share amounts) | Twelve Months Ended December 31, | | |
| --- | --- | --- | --- |
| | 2006 | 2005 As restated (1) | 2004 As restated (1) |
| Numerator: | | | |
| Net income (loss) | $ (13,816) | $ 28,940 | $ 22,361 |
| Denominator: | | | |
| Weighted average shares used to compute basic EPS | 103,048 | 99,876 | 101,931 |
| Dilutive potential shares from stock options, ESPP and restricted stock units | — | 3,654 | 6,616 |
| Weighted average shares used to compute diluted EPS | 103,048 | 103,530 | 108,547 |
| Net income (loss) per share: | | | |
| Basic | $ (0.13) | $ 0.29 | $ 0.22 |
| Diluted | $ (0.13) | $ 0.28 | $ 0.21 |

(1) See Note 3, "Restatement of Consolidated Financial Statements," of the Notes to Consolidated Financial Statements.

For the twelve months ended December 31, 2006 and 2005, approximately 5.9 million shares that would be issued upon the conversion of the contingently issuable convertible notes were excluded from the calculation of earnings per share because the conversion price was higher than the average market price of the Common Stock during this period. For the twelve months ended December 31, 2006, 2005 and 2004, options to purchase approximately 8.2 million, 14.9 million and 7.3 million shares, respectively, were excluded from the calculation because they were anti-dilutive after considering proceeds from exercise, taxes and related unrecognized stock-based compensation costs. For the year ended December 31, 2006, an additional 5.5 million shares that would be dilutive were excluded from the calculation of weighted average dilutive shares because there is a net loss for the period.

## 13. Business Segments, Exports and Major Customers

Rambus operates in a single industry segment, the design, development and licensing of chip interface technologies and architectures. Four customers accounted for 18%, 13%, 12% and 10%, respectively, of revenues in the year ending December 31, 2006. Four customers accounted for 26%, 17%, 11% and 10%, respectively, of revenues in the twelve months ended December 31, 2005. Three customers accounted for 28%, 15% and 13%, respectively, of revenues in the twelve months ended December 31, 2004. Rambus expects that its revenue concentration will decrease over time as Rambus licenses

Form 10-K

new customers.

Rambus sells its chip interfaces and licenses to customers in the Far East, North America, and Europe. Revenues from customers in the following geographic regions were recognized:

Page 139 of 170

Table of Contents

| (in thousands) | Twelve Months Ended December 31, | | |
| | 2006 | 2005 | 2004 |
| --- | --- | --- | --- |
| Japan | $119,884 | $ 96,465 | $ 85,382 |
| North America | 49,186 | 46,098 | 45,351 |
| Taiwan | 975 | 220 | 80 |
| Korea | 1,156 | 8,440 | 13,807 |
| Europe | 24,123 | 5,975 | 254 |
| | $195,324 | $157,198 | $144,874 |

Revenues are attributed to individual countries according to the countries in which the licensees are headquartered. At December 31, 2006, approximately $22.0 million of long-lived assets are located in the United States and approximately $3.2 million are located in India.

## 14. Acquisition

On April 15, 2005, Rambus completed the acquisition of a portion of GDA Technologies ("GDA") including certain proprietary digital core designs for a preliminary total of $6.4 million in cash, including transaction costs. Rambus did not have a pre-existing relationship with GDA before the acquisition. Under the terms of the purchase agreement, Rambus paid a total of $5.3 million in cash to GDA at the initial closing. Rambus was contractually obligated to pay out an additional $1.0 million in conjunction with its acquisition of intellectual property from GDA, and has paid this amount in the quarter ended March 31, 2006. In addition, Rambus paid $0.2 million for legal fees incurred in connection with this transaction. The acquisition has been recorded using the purchase method of accounting in accordance with SFAS No. 141, "Business Combinations," ("SFAS 141"). As a result of the acquisition, Rambus recorded $3.7 million of purchased intangible assets and $2.7 million of goodwill. The valuation of the purchased intangible assets was determined based on their estimated fair values at the acquisition date. The income approach, which includes an analysis of the cash flows and risks associated with achieving such cash flows, was the primary technique utilized in valuing the purchased intangible assets. Key assumptions included estimates of revenue growth, cost of revenues, operating expenses, and discount rates. The discount rates used in the valuation of intangible assets reflected the level of risk associated with the investment, as well as the time value of money.

The purchased intangible assets are being amortized over useful lives of three to five years using the straight-line method. The useful life of existing technology was based on management estimates and the estimated length of economic benefit derived from the technology. The useful life of the non-competition agreement was based on the contractual term of the agreement. The useful life of customer contracts and related relationships was based on estimated customer attrition and technology obsolescence. Amortization expense was $0.9 million and $0.6 million in the twelve months ended December 31, 2006 and 2005, respectively. Rambus estimates that it will expense approximately $0.9 million in each of the twelve months ending December 31, 2007 and 2008, $0.4 million in the twelve months ending December 31, 2009 and $0.1 million in the twelve months ending December 31, 2010.

In addition to the $6.4 million preliminary purchase price, the purchase agreement calls for an earn-out payment that is based on future performance and events. Under the terms of the purchase agreement, the earn-out payment is computed on cash collections from the sale or license of acquired GDA products. Effective April 11, 2006, Rambus and GDA entered into an amendment to the original agreement that extended the earn-out period from one year from the initial closing date to March 31, 2007. The amendment also reduced the maximum earn-out amount from $5.0 million to $3.8 million. Using guidance provided by SFAS 141, Rambus concluded that the earn-out payment is a contingent payment and that the existence of a liability was not determinable as of December 31, 2006. Accordingly, Rambus has not recorded a liability for any earn-out payment as of December 31, 2006. In March 2007, the Company was notified, and later confirmed, that cash collections from the sale or license of these products had exceeded the minimum amount as defined in the purchase agreement and that additional payments were due GDA. As a result, Rambus recorded a liability for the earn-out payment and an increase to goodwill of approximately $1.1 million in the first quarter of fiscal 2007.

Table of Contents

The purchase price has been allocated as follows (in thousands):

| Amortizable intangible assets: | |
|---|---|
| Existing technology | $2,700 |
| Non-competition agreement | 100 |
| Customer contracts and relationships | 900 |
| Goodwill | 2,734 |
| Total purchase price | $6,434 |

## 15. Acquisition of Intellectual Property

*Cadence Design Systems*

In July 2004, Rambus acquired certain serial link intellectual property from Cadence for $11.0 million in cash, to be incorporated into Rambus' serial link product line of serial link cells. In addition, if Cadence achieves certain milestones by a pre-determined time, Rambus has the option, but not the obligation, to purchase additional serial link intellectual property from Cadence for $5.0 million in cash, which intellectual property would also be incorporated into Rambus' serial link product line of serial link cells. Rambus did acquire additional serial link intellectual property from Cadence for an initial price of $2.5 million in December 2005 and for $0.3 million in May 2006 under the agreement. Cadence Engineering Services will gain access to Rambus' portfolio of serial link cells to deliver customized design solutions as needed. Cadence will be the exclusive EDA industry reseller of Rambus' foundry serial link cells and will exclusively sell only Rambus foundry serial link cells off-the-shelf. The technology is valuable for currently available products and continues to be the basis for products under development.

As a result of the acquisition, Rambus recorded $11.1 million of purchased intangible assets, including transaction costs, in 2004, $2.5 million of purchased intangible assets in 2005 and $0.3 million of purchased intangible assets in 2006. These assets are being amortized over their useful lives of four to seven years. Amortization expense of these purchased intangible assets was $3.0 million, $2.4 million and $1.2 million for the twelve months ended December 31, 2006, 2005 and 2004, respectively, Rambus estimates that it will expense approximately $3.1 million in the twelve months ending December 31, 2007, $2.2 million in the twelve months ending December 31, 2008, $1.2 million in the twelve months ending December 31, 2009, $0.5 million in the twelve months ending December 31, 2010 and $0.3 million in the twelve months ending December 31, 2011.

The components of purchased intangibles assets are as follows (in thousands):

| Serial Link Cells | $10,084 |
|---|---|
| Patents | 3,800 |
| Purchased intangible assets: | $13,884 |

The net book value of the Cadence related purchased intangible assets at December 31, 2006 was $7.3 million.

Table of Contents

*Velio Communications, Inc.*

In December 2003, Rambus completed the acquisition of certain high speed signaling assets from Velio for $13.0 million in cash. As a result of this acquisition, Rambus recorded purchased intangible assets of $13.2 million, including transaction costs. The acquired intangible assets include the acquisition of certain Velio high speed signaling assets, the related Velio patent portfolio and the existing Velio licensing business. Rambus integrated these assets into its serial link product line. The technology is valuable for currently available products and continues to be the basis for products under development under an existing contract with one important customer. These assets are being amortized over their useful lives of ten years. Amortization expense of purchased intangible assets was $1.3 million in each of the twelve months ended December 31, 2006, 2005 and 2004. There were no contingent payments required as part of this acquisition. Rambus estimates that it will expense a total of approximately $1.3 million, ratably, for each of the twelve months ending December 31, 2007 through 2013.

The components of purchased intangible assets are as follows (in thousands):

| | |
|---|---:|
| Contractual relationships | $ 7,100 |
| Patents | 6,114 |
| Purchased intangible assets | $13,214 |

The net book value of the Velio related purchased intangible assets at December 31, 2006 was $9.3 million.

The valuation and useful lives of the Cadence and Velio acquired intangible assets were allocated based on estimated fair values at the acquisition dates. The value of the agreements, along with interviews and management's estimates were used to determine the useful lives of the assets. The income approach, which includes an analysis of the cash flows and risks associated with achieving such cash flows, was the primary technique utilized in valuing the acquired patented technology. Key assumptions included estimates of revenue growth, cost of revenues, operating expenses and taxes. The discount rates used in the valuation of intangible assets reflected the level of risk associated with the particular technology and the current return on investment requirements of the market.

## 16. Convertible Notes

On February 1, 2005, Rambus issued $300.0 million aggregate principal amount of zero coupon convertible senior notes due February 1, 2010 to Credit Suisse First Boston LLC and Deutsche Bank Securities in a private offering that were then sold to institutional investors.

The convertible notes are unsecured senior obligations, ranking equally in right of payment with all of Rambus' existing and future unsecured senior indebtedness, and senior in right of payment to any future indebtedness that is expressly subordinated to the convertible notes.

The convertible notes are convertible at any time prior to the close of business on the maturity date into, in respect of each $1,000 principal of convertible notes:

- cash in an amount equal to the lesser of

  (1) the principal amount of each note to be converted and

  (2) the "conversion value," which is equal to (a) the applicable conversion rate, multiplied by (b) the applicable stock price, as defined.

- if the conversion value is greater than the principal amount of each note, a number of shares of Rambus Common Stock (the "net shares") equal to the sum of the daily share amounts, calculated as defined. However, in lieu of delivering net shares, Rambus, at its option, may deliver cash, or a combination of cash and shares of its Common Stock, with a value equal to the net shares amount.

Table of Contents

The initial conversion price is $26.84 per share of Common Stock (which represents an initial conversion rate of 37.2585 shares of Rambus Common Stock per $1,000 principal amount of convertible notes). The initial conversion price is subject to adjustment as defined.

The convertible notes are carried at fair value at December 31, 2006 and 2005 due to the cash settlement feature. The convertible notes are subject to repurchase in cash in the event of a fundamental change involving Rambus at a price equal to 100% of the principal amount. Rambus may be obligated to pay an additional premium (payable in shares of Common Stock) in the event the convertible notes are converted following a fundamental change. The premium is based on numerous factors and could be up to 33% per $1,000 principal amount of convertible notes.

Upon the occurrence of an event of default, Rambus' obligations under the convertible notes may become immediately due and payable. An event of default is defined as:

- default in the payment when due of any principal of any of the convertible notes at maturity, upon exercise of a repurchase right or otherwise;

- default in the payment of liquidated damages, if any, which default continues for 30 days;

- default in Rambus' obligation to provide notice of the occurrence of fundamental change when required by the indenture;

- failure to comply with any of Rambus' other agreements in the convertible notes or the indenture upon its receipt of notice to it of such default from the trustee or to Rambus and the trustee from holders of not less than 25% in aggregate principal amount at maturity of the convertible notes, and Rambus fails to cure (or obtain a waiver of) such default within 60 days after it receives such notice;

- failure to pay when due the principal of, or acceleration of, any indebtedness for money borrowed by Rambus or any of its subsidiaries in excess of $30.0 million principal amount, if such indebtedness is not discharged, or such acceleration is not annulled, by the end of a period of ten days after written notice to Rambus by the trustee or to Rambus and the trustee by the holders of at least 25% in principal amount of the outstanding convertible notes; and

- certain events of bankruptcy, insolvency or reorganization relating to Rambus.

Rambus may not redeem the convertible notes prior to their maturity date.

On July 20, 2005, Rambus repurchased $60.0 million face value of the outstanding convertible notes, for a price of approximately $49.6 million. The gain of approximately $10.4 million, less related unamortized note issuance costs of approximately $1.3 million was recognized as other income in the year ended December 31, 2005.

On August 30, 2005, Rambus repurchased $45.0 million face value of the outstanding convertible notes for a price of approximately $34.5 million. The gain of approximately $10.5 million, less related unamortized notes issuance costs of approximately $1.0 million was recognized as other income in the year ended December 31, 2005.

On October 20, 2005, Rambus repurchased $35.0 million face value of the outstanding convertible notes for a price of approximately $28.9 million. The gain of approximately $6.1 million, less related unamortized notes issuance costs of approximately $0.7 million was recognized as other income in the year ended December 31, 2005.

These repurchases were financed from Rambus' investment portfolio.

At the time of the issuance, Rambus recorded $7.2 million of related note issuance costs in long-term other assets which was subsequently reduced to $4.2 million related to the repurchases of Rambus' outstanding convertible notes in 2005. For the fiscal years ended December 31, 2006 and 2005, Rambus recorded amortization expense of $3.2 million and $1.1 million, respectively. The 2006 expense includes the impact of the acceleration of the convertible notes as discussed below.

On August 17, 2006, Rambus received a notice of default from U.S. Bank National Association, as trustee (the "Trustee") for the convertible notes. The notice asserted that the Company's failure to file its Form 10-Q for the quarter

Table of Contents

ended June 30, 2006 constituted a default under Sections 7.2 and 14.1 of the indenture, dated as of February 1, 2005 between Rambus and the Trustee (the "Indenture"). The notice stated that per Section 9.1 of the Indenture, if Rambus did not cure the default within sixty days of August 17, 2006, an event of default would occur. On October 25, 2006, Rambus received a notice from the Trustee stating that since the Company had not cured the default that had been asserted by the Trustee within the sixty day cure period, an event of default had in fact occurred as of October 16, 2006. On January 22, 2007, Rambus received an additional notice of default from the Trustee relating to the Company's failure to file its Form 10-Q for the quarter ended September 30, 2006. On July 31, 2007, Rambus received a notice of acceleration from the Trustee stating that under direction received from holders of more than 25% in aggregate principal amount of the outstanding convertible notes, the Trustee was declaring the unpaid principal plus accrued interest and unpaid liquidated damages immediately due and payable. Default interest on the convertible notes accrues at a rate of 2% per annum from the date on which full payment of the convertible notes is due to the date that full payment is made.

As of December 31, 2006, the Company has reclassified the aggregate principal amount of the convertible notes of $160.0 million from non-current liabilities to current liabilities and reflected them as due in less than one year. In addition, related issuance costs of approximately $3.2 million have been expensed in 2006, including approximately $2.4 million which was recorded in the quarter ending December 31, 2006. Rambus is evaluating its options with respect to the convertible notes as a result of the receipt of the notice of acceleration and believes that it has adequate financial resources to pay any unpaid principal and any accrued or default interest due on the convertible notes.

## 17. Litigation and Asserted Claims

### *Stock option investigation related claims*

On May 30, 2006, the Audit Committee commenced an internal investigation of the timing of past stock option grants and related accounting issues.

On May 31, 2006, the first of three shareholder derivative actions was filed in the Northern District of California against Rambus (as a nominal defendant) and certain current and former executives and board members. On August 9, 2006, these actions were consolidated for all purposes under the caption, *In re Rambus Inc. Derivative Litigation*, Master File No. C-06-3513-JF (N.D. Cal.), and Howard Chu and Gaetano Ruggieri were appointed lead plaintiffs. On October 2, 2006, a consolidated complaint was filed. On November 3, 2006, plaintiffs filed an amended consolidated complaint. The complaint alleges violations of certain federal and state securities laws as well as other state law causes of action. The complaint seeks disgorgement and damages in an unspecified amount, unspecified equitable relief, and attorneys' fees and costs.

On July 24, 2006, another shareholder derivative action was filed in Santa Clara Superior Court against Rambus (as a nominal defendant) and certain current and former executives and board members (*Soffer v. Tate et al.,* 1-06-cv-067853 (Santa Clara Sup. Court)). Rambus filed a motion to dismiss this suit on August 23, 2006. On October 10, 2006, the California court heard oral argument on Rambus' motion. In an order filed on October 20, 2006, the California court granted Rambus' motion and dismissed the complaint.

On August 22, 2006, another shareholder derivative action was filed in Delaware Chancery Court against Rambus (as a nominal defendant) and certain current and former executives and board members (*Bell v. Tate et al.,* 2366-N (Del. Chancery)). Pursuant to agreement of the parties, no deadline for Rambus to respond to the complaint has been set.

Page 144 of 170

Table of Contents

On October 18, 2006, the Board of Directors formed a Special Litigation Committee (the "SLC") to evaluate potential claims or other actions arising from the stock option granting activities. The Board of Directors has appointed J. Thomas Bentley, Chairman of the Audit Committee, and Abraham Sofaer, a retired federal judge and Chairman of the Legal Affairs Committee, both of whom joined the Rambus Board of Directors in 2005, to comprise the SLC.

On August 24, 2007, the final written report setting forth the findings of the Special Litigation Committee was filed with the California court. As set forth in its report, the SLC determined that all claims should be terminated and dismissed against the named defendants in *In re Rambus Inc. Derivative Litigation* with the exception of claims against named defendant Ed Larsen, who served as Vice President, Human Resources from September 1996 until December 1999, and then Senior Vice President, Administration until July 2004. The SLC entered into settlement agreements with certain former officers of the Company. These settlements are conditioned upon the dismissal of the claims asserted against these individuals in *In re Rambus Inc. Derivative Litigation.* The aggregate value of the settlements to the Company exceeds $6.5 million in cash and cash equivalents as well as substantial additional value to the Company relating to the relinquishment of claims to over 2.7 million stock options. The SLC intends to assert control over the litigation. The conclusions and recommendations of the SLC are subject to review by the California court. At a case management conference on September 7, 2007, Rambus informed the California court that it intended to file a motion to terminate in accordance with the SLC's recommendations. Rambus' motion is due by October 5, 2007. Plaintiffs stated their intention to oppose Rambus' motion and to file a motion for leave to amend their complaint. The California court scheduled a hearing on both motions for January 18, 2008.

On August 30, 2007, another shareholder derivative action was filed in the Southern District of New York against Rambus (as a nominal defendant) and PricewaterhouseCoopers LLP. Rambus is evaluating the complaint but believes the action should be transferred to the Northern District of California and made part of *In re Rambus Inc. Derivative Litigation*, Master File No. C-06-3513-JF (N.D. Cal.), pursuant to the consolidation order dated August 9, 2006.

On July 17, 2006, the first of six class action lawsuits was filed in the Northern District of California against Rambus and certain current and former executives and board members. On September 26, 2006, these class action suits were consolidated under the caption, *In re Rambus Inc. Securities Litigation*, C-06-4346-JF (N.D. Cal.). On November 9, 2006, Ronald L. Schwarcz was appointed lead plaintiff. An amended consolidated complaint was filed on February 14, 2007, naming as defendants Rambus, certain of its current and former executives and board members, and PricewaterhouseCoopers LLP. The complaint alleges violations of various federal securities laws. The complaint seeks damages in an unspecified amount as well as attorneys' fees and costs. On April 2, 2007, Rambus and certain individual defendants filed a motion to dismiss the lawsuit. PricewaterhouseCoopers LLP filed a motion to dismiss on May 7, 2007. Per agreement of the parties, briefing on the motions to dismiss has been suspended, and a hearing on the motion to dismiss previously scheduled for June 22, 2007, was taken off calendar. No new date for the hearing has been set. Subject to approval by the California court, the parties have agreed in principle to settle this dispute. The settlement, which is subject to final documentation as well as review by the California court, provides for a payment by Rambus of $18.0 million and would lead to a dismissal with prejudice of all claims against all defendants in the class action litigation.

On March 1, 2007, a pro se lawsuit was filed in the Northern District of California by two alleged Rambus shareholders against Rambus, certain current and former executives and board members. and PricewaterhouseCoopers LLP (*Kelley et al. v. Rambus, Inc. et al.* C-07-01238-JF (N.D. Cal.)). On April 25, 2007, the plaintiffs filed an amended complaint adding Wilson Sonsini Goodrich & Rosati, P.C., as a defendant. The plaintiffs filed second and third amended complaints without leave of court on May 8 and 14, 2007, respectively. On May 14, 2007 this case was related to the

Table of Contents

class action, *In re Rambus Inc. Securities Litigation*, C-06-4346-JF. Rambus and the other named defendants filed or joined various motions to dismiss the third amended complaint on June 4 and 5, 2007. On May 8, 2007, a substantially identical pro se lawsuit was filed in the Northern District of California by another purported Rambus shareholder against the same parties. These two pro se lawsuits each allege violations of federal and state securities laws, and state law claims for fraud and breach of fiduciary duty. The two lawsuits were consolidated into a single action by court order dated June 25, 2007. Rambus' pending motion to dismiss was taken off calendar, and plaintiffs filed a consolidated amended complaint on July 25, 2007. Rambus and other defendants filed motions to dismiss on August 10, 2007. At a hearing on these motions held on September 7, 2007, the California court stated the intention to dismiss the complaint with leave to amend, but no written order has been issued to date.

All of these cases relate to stock options issues. There can be no assurance that additional claims or actions arising out of or related to stock option issues will not be asserted against Rambus and its current or former executives and board members.

### FTC Complaint

On June 19, 2002, the Federal Trade Commission, or FTC, filed a complaint against Rambus. The FTC alleged that through Rambus' action and inaction at a standards setting organization called JEDEC, Rambus violated Section 5 of the FTC Act in a way that allowed Rambus to obtain monopoly power in-or that by acting with intent to monopolize it created a dangerous probability of monopolization in-synchronous DRAM technology markets. The FTC also alleged that Rambus' action and practices at JEDEC constituted unfair methods of competition in violation of Section 5 of the FTC Act. As a remedy, the FTC sought to enjoin Rambus' right to enforce patents with priority dates prior to June 1996 as against products made pursuant to certain existing and future JEDEC standards.

On February 17, 2004, the FTC Chief Administrative Law Judge issued his initial decision dismissing the FTC's complaint against Rambus on multiple independent grounds (the "Initial Decision"). The FTC's Complaint Counsel ("Complaint Counsel") appealed this decision.

On August 2, 2006, the FTC released its July 31, 2006, opinion and order reversing and vacating the Initial Decision and determining that Rambus violated Section 5 of the Federal Trade Commission Act. The FTC characterized Complaint Counsel's proposal for a full ban on enforcement of Rambus' patents as "extreme[]" and ordered further briefing on issues relating to remedy. Rambus and Complaint Counsel each filed simultaneous briefs on September 15 and 29, 2006. Following submission of briefs by Complaint Counsel, Rambus, and various amici curiae, the FTC heard oral argument on remedy issues on November 15, 2006.

On February 5, 2007, the FTC released its February 2, 2007, opinion and order on remedy. The remedy order sets the maximum royalty rate that Rambus can collect on the manufacture, use or sale in the United States of certain JEDEC-compliant parts after the Order becomes effective, as follows: 0.25% for SDRAM products; 0.5% for DDR SDRAM products; 0.5% for SDRAM memory controllers or other non-memory chip components; and 1.0% for DDR SDRAM memory controllers or other non-memory chip components. The order specifies that these maximum rates will be in effect for three years, after which time the maximum rates for these products will be 0%. The order also mandates

Table of Contents

that Rambus offer a license for these products at rates no higher than the maximums set by the FTC, including a further cap on rates for the affected non-memory products. The order further requires Rambus to take certain steps to comply with the terms of the order and applicable disclosure rules of any standard setting organization of which it may become a member.

The FTC's order explicitly does not set maximum rates or other conditions with respect to Rambus' royalty rates for DDR2 SDRAM, other post-DDR JEDEC standards, or for non-JEDEC-standardized technologies such as those used in RDRAM or XDR DRAM.

On February 16, 2007, Rambus filed with the FTC: i) a motion for a stay of the remedy order pending its appeal; and ii) a petition for reconsideration of the remedy order. On February 26, 2007, Complaint Counsel filed an opposition in part to Rambus' motion to stay and a response to Rambus' petition for reconsideration.

On March 16, 2007, the FTC issued an order granting in part and denying in part Rambus' motion for a stay. The March 16 order permits Rambus to acquire rights to royalty payments for use of the patented technologies affected by the February 2 remedy order during the period of the stay in excess of the FTC-imposed maximum royalty rates on SDRAM and DDR SDRAM products, provided that funds above the maximum allowed rates be placed into an escrow account to be distributed in accordance with the ultimate decision of the court of appeals. In an opinion accompanying its order, the FTC clarified that it intended its remedy to be "forward-looking" and "prospective only," and therefore unlikely to be construed to require Rambus to refund royalties already paid or to restrict Rambus from collecting royalties for the use of its technologies during past periods.

On April 4, 2007, Rambus filed a petition for review of the FTC's liability and remedy orders in the United States Court of Appeals for the District of Columbia.

On April 27, 2007, the FTC issued an order granting in part and denying in part Rambus' petition for reconsideration of the remedy order. The FTC's order and accompanying opinion on Rambus' petition for reconsideration clarified the remedy order in certain respects. For example, a) the FTC explicitly stated that the remedy order does not require Rambus to make refunds or prohibit it from collecting royalties in excess of maximum allowable royalties that accrue up to the effective date of the remedy order (i.e., April 12, 2007); b) the remedy order was modified to specifically permit Rambus to seek damages in litigation up to three times the specified maximum allowable royalty rates on the ground of willful infringement and any allowable attorneys' fees; and c) under the remedy order, licensees may pay Rambus a flat fee in lieu of running royalties, even if this resulted in payments above the FTC's rate caps - in certain circumstances.

On May 3, 2007, Rambus filed a petition for review of the FTC's order granting in part and denying in part Rambus' petition for reconsideration of the remedy order in the United States Court of Appeals for the District of Columbia. On June 27, 2007, this petition was consolidated with its earlier-filed petition appealing the FTC's liability and remedy orders. Rambus' opening appellate brief is due by September 21, 2007; the Commission may file an opposition by November 21, 2007; any reply by Rambus is due by December 21, 2007. No hearing date has been set.

Table of Contents

### Infineon Litigation

On August 8, 2000, Rambus filed suit in the U.S. District Court for the Eastern District of Virginia (the "Virginia court") against Infineon, and its North American subsidiary for infringement of two U.S. patents. In February 2005, the Virginia court held a four-day bench trial on Infineon's unclean hands defense, which included allegations of litigation misconduct and spoliation of evidence. On March 1, 2005, the Virginia court orally stated that Infineon had proven that Rambus had unclean hands, that Rambus had spoliated evidence, and that dismissal of Rambus' patent infringement case was the appropriate sanction. On March 21, 2005, before the Virginia court issued written findings of fact and conclusions of law, the parties reached a global settlement of all disputes between them, and dismissed with prejudice all outstanding lawsuits between the companies worldwide. Although the parties settled their dispute, in one patent infringement action in Germany, Infineon's attorneys disputed the amount of court fees that Rambus is required to pay under German law following the European Patent Office's dismissal of a Rambus European patent, EP 0 525 068 (the "'068 patent"). On August 21, 2006, the Mannheim court issued decisions setting Rambus' owed court costs at approximately 330,000 Euros, and applying a statutory multiple. Rambus appealed the issue of whether the statutory multiple is properly applied. On June 20, 2007, Rambus' appeal was denied, resulting in an aggregate liability of 840,000 Euros. Payment of this amount has now finally resolved all liabilities arising out of the disputes between Rambus and Infineon world wide.

### Hynix Litigation

#### U.S District Court of the Northern District of California

On August 29, 2000, Hynix (formerly Hyundai) and various subsidiaries filed suit against Rambus in the U.S. District Court for the Northern District of California (the "California court"). The case was assigned to the Honorable Ronald M. Whyte. The complaint, as amended, asserts claims for breach of contract, fraud, negligent misrepresentation, and violations of federal antitrust laws and deceptive practices in connection with Rambus' participation in JEDEC, and seeks a declaratory judgment that the Rambus patents-in-suit are invalid and not infringed by Hynix, compensatory and punitive damages, and attorneys' fees. Rambus denied Hynix's claims and filed counterclaims alleging that Hynix has infringed and is infringing 59 patent claims in 15 Rambus patents.

The California court divided the case into three phases: (1) Hynix's unclean hands and spoliation of evidence defenses; (2) Rambus' patent infringement case and Hynix's patent-related affirmative defenses; and (3) Hynix's claims arising from Rambus' conduct at JEDEC and other alleged misconduct not directly tied to patent issues.

Relying on the Virginia court's oral ruling in the *Infineon* case in March 2005, Hynix moved to dismiss this case on the grounds of collateral estoppel. The California court denied Hynix's motion on April 25, 2005.

Table of Contents

The first phase of the Hynix-Rambus trial-on unclean hands and spoliation-began on October 17, 2005 and concluded on November 1, 2005. On January 4, 2006, the California court issued its Findings of Fact and Conclusions of Law. Among other things, the court found that Rambus did not adopt its document retention policy in bad faith, did not engage in unlawful spoliation of evidence, and that while Rambus disposed of some relevant documents pursuant to its document retention policy, Hynix was not prejudiced by the destruction of Rambus documents. Accordingly, the California court held that Hynix's unclean hands defense failed. On February 23, 2006, the California court denied a motion filed by Hynix for a new trial and its request for an immediate appeal. On September 15, 2006, Hynix moved to certify for interlocutory appeal (1) the April 25, 2005, order denying Hynix's motion to dismiss for unclean hands on the basis of collateral estoppel; and (2) the January 4, 2006, Findings of Fact and Conclusions of Law rejecting Hynix's unclean hands defense. The California court denied Hynix's motion on December 19, 2006.

The second phase of the Hynix-Rambus trial-on patent infringement, validity and damages-began on March 15, 2006, and was submitted to the jury on April 13, 2006. On April 24, 2006, the jury returned a verdict in favor of Rambus on all issues, and awarded Rambus a total of approximately $307 million in damages, excluding prejudgment interest. Specifically, the jury found that each of the ten selected patent claims was supported by the written description, and was not anticipated or rendered obvious by prior art; therefore, none of the patent claims were invalid. The jury also found that Hynix infringed all eight of the patent claims for which the jury was asked to determine infringement; the California court had previously determined on summary judgment that Hynix infringed the other two claims at issue in the trial. The jury further found that Rambus suffered approximately $31 million in damages as a result of infringement by Hynix's SDR SDRAM products and approximately $276 million in damages as a result of infringement by Hynix's DDR SDRAM products.

On May 5, 2006, Hynix filed motions for judgment as a matter of law and new trial on certain issues relating to validity, infringement, and damages; Rambus filed a motion for prejudgment interest. The California court held a hearing on the parties' post-trial motions on June 27, 2006, and took them under submission. On July 17, 2006, the California court granted Hynix's motion for a new trial on the issue of damages unless Rambus agreed within 30 days to a reduction of the total jury award to approximately $134 million. The California court found that while the royalty rates in certain negotiated Rambus patent licenses (.75% for SDR SDRAM and 3.5% for DDR SDRAM) were conservative and could be adjusted upward to calculate damages, the evidence did not support the adjustment applied by the jury. Rather, the California court found that the record supported a maximum royalty rate of 1% for SDR SDRAM and 4.25% for DDR SDRAM, which the court applied to the stipulated U.S. sales of infringing Hynix products through December 31, 2005 to reach the approximately $134 million. On July 27, 2006, Rambus elected remittitur of the jury's award to approximately $134 million. No opinion has issued to date on any of the parties' other post-trial motions.

The third phase of the Hynix-Rambus trial involves Hynix's allegations that Rambus engaged in misconduct in connection with, *inter alia*, a standard setting body. On February 24, 2006, Rambus filed four motions relating to this phase of the trial. The California court heard oral argument on these motions on March 31, 2006. On July 6, 2006, the California court granted Rambus' motion for summary adjudication on Hynix's antitrust and unfair competition claims to the extent they were based on Hynix's alleged theories of "RDRAM dominance" and "DDR suppression," but denied Rambus' motion for judgment on the pleadings on Hynix's equitable estoppel defense. On July 7, 2006, the California court granted Rambus' motion for summary adjudication that Rambus' use or threats of litigation to enforce its patents is protected petitioning activity, and that Hynix's claims are thus barred to the extent they are solely based on Rambus' litigation activities. On July 17, 2006, the California court issued an order (i) granting Rambus' motion for summary judgment on Hynix's breach of contract, promissory estoppel, and constructive fraud claims; (ii) denying Rambus' motion for summary judgment on Hynix's actual fraud claim; (iii) granting summary adjudication on certain issues

Table of Contents

relating to Rambus' alleged duty to disclose; and (iv) denying summary adjudication on certain other issues relating to Rambus' alleged duty to disclose, including whether any alleged breach caused no injury to Hynix.

The third phase of the trial was scheduled to begin on August 21, 2006. However, prior to the start of trial, the Federal Trade Commission (the "FTC") issued its liability opinion finding that Rambus engaged in deceptive conduct at JEDEC in violation of Section 5 of the Federal Trade Commission Act (see above). At a pretrial conference hearing on August 3, 2006, the California court ordered the parties to submit briefs addressing the issue of what effect, if any, the FTC's liability opinion might have on the third phase of the trial. On August 22, 2006, the California court stayed the third phase of the trial until the earlier of February 2, 2007, or issuance of a final order of the FTC. The stay was conditioned upon (a) Hynix's agreement to post security adequate to ensure payment of previously awarded damages, prejudgment interest, and royalties for infringing sales between January 1, 2006 and February 2, 2007; and (b) Hynix's designation within ninety days of any specific findings by the FTC that Hynix contends should be accorded prima facie evidentiary effect in the third phase of the trial. Hynix formally agreed to the conditions of the stay on August 24, 2006, and posted a bond in the amount of approximately $192 million on September 22, 2006. The California court has since granted Hynix's motion for release of the bond following the automatic expiration of the stay on February 2, 2007.

In the latter half of 2006, the parties filed several motions relating to the impact, if any, of the FTC's liability opinion on the third phase of the Hynix trail. On October 16, 2006, Hynix filed its brief seeking to give prima facie evidentiary effect to certain findings by the FTC in the third phase of the Hynix trial. Hynix also filed a motion in which it argued that the FTC had made findings entitling it to summary judgment on its state unfair competition claim and its equitable estoppel defense. On October 16, 2006, Rambus filed a motion for partial reconsideration of the California court's August 22 order to the extent that it had suggested that any portion of the FTC's opinion could be given evidentiary effect in the third phase of the trial. On December 1, 2006, Hynix filed a motion for new trial on patent damages based on the FTC's liability opinion. The California court heard oral argument on all four of these motions on January 26, 2007. On August 15, 2007, the California court denied without prejudice Hynix's motion for a new trial on patent damages based on the FTC's liability opinion. The California court has not yet issued a written decision on any of the other motions, but it did indicate at the hearing that it would deny Rambus' motion for partial reconsideration.

On April 4, 2007, the California court held a case management conference involving Rambus, Hynix, Micron, Samsung, and Nanya to discuss how each of the various actions involving Rambus and these other parties should proceed. On April 24, 2007, the California court ordered that this action (*Hynix v Rambus*, Case No. C 00-20905 RMW) and three others pending before the same court (*Rambus Inc. v. Samsung Electronics Co. Ltd. et al.*, Case No. 05-02298 RMW, *Rambus Inc. v. Hynix Semiconductor Inc., et al.*, Case No. 05-00334, and *Rambus Inc. v. Micron Technology, Inc., et al.*, Case No. C 06-00244 RMW, each described in further detail below) shall have a coordinated trial beginning on January 22, 2008, of certain common claims and defenses related to the claims set to be tried in the third phase of the *Hynix* 00-20905 action. The order states that it is the California court's intention that the *Hynix* 00-20905 action will be ready for entry of final judgment shortly after the conclusion of the January 22, 2008 trial.

As a result of the coordinated proceedings, the California court permitted supplemental briefing on issues relating to what effect, if any, the FTC opinion has on the claims to tried in the January 22, 2008 trial (see below). Oral argument on these briefs was heard on August 3, 2007.

Table of Contents

On June 27, 2007, the California court granted Hynix's request to file a short brief regarding what effect, if any, the Supreme Court's decision in *KSR* has on the patent verdict. Hynix filed its opening brief on July 6, 2007. Rambus filed an opposition brief on August 3, 2007. The California court will advise the parties if it wishes to hear any oral argument.

### European Patent Infringement Case

Beginning on September 4, 2000, Rambus filed suit against Hynix in multiple European jurisdictions for infringement of the '068 patent. Rambus later filed a further infringement action against Hynix in Mannheim, Germany on a second patent, EP 1 004 956 (the "'956 patent"). Both patents were opposed by Hynix, Micron, and Infineon in the European Patent Office (EPO). The '068 patent was revoked by an Appeal Board in 2004, and the '956 patent was revoked in the first instance by an Opposition Board on January 13, 2005. The decision with respect to the '956 patent is being appealed.

### Micron Litigation

#### U.S District Court in Delaware: Case No. 00-792-SLR

On August 28, 2000, Micron filed suit against Rambus in the U.S. District Court in Delaware (the "Delaware court"). The suit asserts violations of federal antitrust laws, deceptive trade practices, breach of contract, fraud and negligent misrepresentation in connection with Rambus' participation in JEDEC. Micron seeks a declaration of monopolization by Rambus, compensatory and punitive damages, attorneys' fees, a declaratory judgment that eight Rambus patents are invalid and not infringed, and the award to Micron of a royalty-free license to the Rambus patents. Rambus has filed an answer and counterclaims disputing Micron's claims and asserting infringement by Micron of twelve U.S. patents.

On January 13, 2006, the Delaware court issued an order lifting the stay that had prevented Rambus from filing certain new patent litigation against Micron since February 27, 2002. Also on January 13, 2006, the Delaware court issued an order confirming that the trial there will proceed in three phases in the same general order as in the *Hynix* case: (1) unclean hands; (2) patent infringement; and (3) antitrust, equitable estoppel, and related issues ("conduct"). In a scheduling order dated March 16, 2006, the Delaware court set the unclean hands trial to begin on October 23, 2006; the patent trial to begin on November 5, 2007; and the conduct trial to begin on November 10, 2008.

On April 25, 2006, the Virginia court transferred Micron's RICO and conspiracy case (described below as *U.S District Court in Delaware: Case No. 06-269----*) to the District of Delaware. On May 8, 2006, Micron filed a motion to consolidate its RICO and conspiracy action into the Delaware unclean hands trial. Rambus filed an opposition to Micron's motion to consolidate on May 22, 2006. During a hearing on June 14, 2006, Micron withdrew its motion to consolidate.

Page 151 of 170

Table of Contents

On June 29, 2006, Micron moved for leave to file a second amended complaint to add new factual allegations and a claim for unfair competition under California Business & Professions Code sections 17200 *et seq.,* to be tried as part of the conduct phase. On July 13, 2007, the Delaware court granted Micron's motion to amend and Micron filed a second amended complaint on September 5, 2007.

On September 18, 2006, the Delaware court postponed the "unclean hands" trial previously scheduled for October 23, 2006, and later reset the trial date to May 2007 in view of Judge Kent A. Jordan's nomination to the United States Court of Appeals for the Third Circuit. On December 15, 2006, this action was reassigned to the vacant judicial position left by the elevation of Judge Jordan to the Third Circuit, and the trial dates were subsequently vacated. On March 26, 2007, Rambus filed a renewed motion to transfer this case to the Northern District of California. On April 2, 2007, this case was reassigned to Judge Joseph J. Farnan. On June 14, 2007, the Delaware court denied Rambus' motion to transfer and set Micron's "unclean hands" claims for trial commencing October 15, 2007. On July 16, 2007, this case was reassigned to Judge Sue L. Robinson.

### *U.S. District Court in Delaware: Case No. 06-269----*

On February 21, 2006, Micron filed suit against Rambus in the U.S. District Court in the Eastern District of Virginia, asserting claims for violation of the federal civil Racketeer Influenced and Corrupt Organizations Act (RICO) and Virginia state conspiracy laws. Among other things, the complaint alleges document spoliation and litigation misconduct. Rambus believes these claims lack merit. On February 28, 2006, Rambus filed a motion to enjoin Micron from pursuing its RICO and conspiracy suit in the Eastern District of Virginia. On March 29, 2006, the Delaware court granted Rambus' motion to enjoin Micron's suit in the Eastern District of Virginia. On April 10, 2006, the parties notified the Virginia court that the Delaware court had granted Rambus' motion to enjoin Micron from pursuing its suit in the Eastern District of Virginia. On April 21, 2006, the Virginia court entered an order transferring the case to the U.S. District Court in Delaware.

On May 26, 2006, Rambus moved to dismiss Micron's complaint on the grounds that, among other things: (1) Micron's claims are barred by the statute of limitations; (2) Micron's claims fail on the merits; and (3) Micron's claims are barred by the *Noerr-Pennington* doctrine. Briefing on this motion is complete. Micron has requested oral argument, but no hearing date has been set. On December 15, 2006, this action was reassigned to the vacant judicial position left by the elevation of Judge Kent A. Jordan to the United States Court of Appeals for the Third Circuit.

### *U.S. District Court of the Northern District of California*

Following the lifting of the stay by the Delaware court, Rambus filed suit against Micron in the U.S. District Court in the Northern District of California on January 13, 2006. In its amended complaint, filed April 7, 2006, Rambus alleges that 14 Rambus patents are infringed by Micron's DDR2, GDDR3, and other advanced memory products. Rambus seeks compensatory and punitive damages, attorneys' fees, and injunctive relief. On June 2, 2006, Micron filed an answer denying Rambus' allegations and alleging counterclaims for violations of federal antitrust laws, unfair trade

Table of Contents

practices, equitable estoppel, breach of contract, fraud and negligent misrepresentation in connection with Rambus' participation in JEDEC. Micron seeks a declaration of monopolization by Rambus, injunctive relief, compensatory and punitive damages, attorneys' fees, and a declaratory judgment of invalidity, unenforceability, and noninfringement of the 14 patents in suit.

Following a case management conference held on October 6, 2006, the California court temporarily stayed this action until February 2, 2007, upon which the stay automatically expired. On March 23, 2007, Rambus filed a motion to dismiss certain of Micron's counterclaims. On June 19, 2007, the California court issued an order denying Rambus' motion. On July 9, 2007, Rambus filed its reply to Micron's amended counterclaims, as well as its own counterclaims asserting infringement by Micron's DDR3 products. On July 30, 2007, Micron filed a motion to strike, or alternatively to stay, Rambus' infringement counterclaims in reply. A hearing on Micron's motion is currently set for October 26, 2007.

On April 24, 2007, the California court ordered that *Hynix v Rambus*, Case No. C 00-20905 RMW, *Rambus Inc. v. Samsung Electronics Co. Ltd. et al.*, Case No. 05-02298 RMW, *Rambus Inc. v. Hynix Semiconductor Inc., et al.*, Case No. 05-00334, and *Rambus Inc. v. Micron Technology, Inc., et al.*, Case No. C 06-00244 RMW, shall have a coordinated trial beginning on January 22, 2008, of certain common claims and defenses related to the claims set to be tried in the third phase of the *Hynix* 00-20905 action. The California court also coordinated these cases for certain other purposes, including discovery and preparation (but not trial) of the patent infringement claims and defenses. A claim construction hearing is currently scheduled for March 25-26, 2008, and one or more trial on Rambus' patent infringement claims is set to begin on January 19, 2009.

As a result of the coordinated proceedings, the California court permitted supplemental briefing on issues relating to what effect, if any, the FTC opinion has on the claims to tried in the January 22, 2008 trial. On June 28, 2007, Micron, Nanya, and Samsung filed (1) a joint motion seeking to give prima facie evidentiary effect to certain findings by the FTC in the January 22, 2008 trial; and (2) a joint brief in support of Hynix's motion for summary judgment in the *Hynix* 00-20905 action on Hynix's state unfair competition claim and equitable estoppel defense based on findings made by the FTC. Rambus filed opposition briefs to these motions on July 16, 2007. Micron, Nanya, and Samsung filed reply briefs on July 23 and 24, 2007. Oral argument on these motions was held on August 3, 2007. The Court took the motions under submission, and no opinion has issued to date on these motions.

*European Patent Infringement Cases*

On September 11, 2000, Rambus filed suit against Micron in multiple European jurisdictions for infringement of its '068 patent (described above), which was later revoked. Additional suits were filed pertaining to the '956 patent and a third Rambus patent, EP 1 022 642 (the "'642 patent"). Rambus' suit against Micron for infringement of the '642 patent in Mannheim, Germany, has not been active.

One proceeding in Italy relating to the '642 patent was adjourned at a hearing on June 15, 2007, each party bearing its own costs. In a second proceeding in Italy relating to the '956 patent, the court has scheduled a hearing for November 8, 2007, regarding continuation of the proceedings. On September 29, 2005, Rambus received a letter from

Table of Contents

Micron seeking to toll a statute of limitations period in Italy for a purported cause of action resulting from a seizure of evidence in Italy in 2000 carried out by Rambus pursuant to a court order. Micron asserts that its damages allegedly caused by this seizure equal or exceed $30.0 million. Micron formally filed suit against Rambus relating to this seizure in February 2006. Rambus filed its written defense on April 24, 2006. The Italian court has ordered further briefing on issues related to Rambus' suit in Italy for infringement of its '068 patent. A hearing in the Italian court is set for October 30, 2007, on both proceedings involving the '068 patent and Micron's claim for damages related to seizure of evidence.

### DDR2, GDDR2 & GDDR3 Litigation ("DDR2")

#### U.S District Court in the Northern District of California

On January 25, 2005, Rambus filed a patent infringement suit in the U.S. District Court in the Northern District of California court against Hynix, Infineon, Nanya, and Inotera regarding DDR2 and GDDR2, and GDDR3 products. Pursuant to the settlement with Infineon noted above, Rambus dismissed Infineon from this litigation. Rambus added Samsung as a defendant on June 6, 2005. Inotera was dismissed from the lawsuit without prejudice by way of stipulated order on October 5, 2005. Accordingly, this case is currently pending against Hynix, Samsung, and Nanya only. These defendants have all filed answers denying Rambus' claims and asserting counterclaims against Rambus.

On February 21, 2006, Rambus filed a motion to dismiss certain of Samsung's amended defenses and counterclaims. A hearing on Rambus' motion was held on April 7, 2006. On January 4, 2007, the California court granted Rambus' motion with leave to amend. On January 31, 2007, Samsung filed second amended defenses and counterclaims.

Following a case management conference held on October 6, 2006, the California court temporarily stayed this action until February 2, 2007, upon which the stay automatically expired. On March 23, 2007, Rambus filed motions to dismiss certain of Samsung's, Hynix's, and Nanya's counterclaims. On June 19, 2007, the California court issued orders denying Rambus' motions as to Hynix's and Nanya's counterclaims. No opinion on the motion to dismiss Samsung's counterclaims has issued to date. On July 9, 2007, Rambus filed replies to Hynix, Nanya, and Samsung's respective amended counterclaims, as well as its own counterclaims asserting infringement by defendants' respective DDR3 products as well as the GDDR4 products of Hynix and Samsung. On July 30, 2007, Hynix filed an answer to Rambus' counterclaims and a motion to strike certain of Rambus' affirmative defenses. On August 2, 2007, Samsung and Nanya filed separate motions to strike Rambus' infringement counterclaims in reply. On August 20, 2007, Rambus filed a response to Hynix's counterclaims in reply, and on September 6, 2007, Hynix filed a further motion to strike certain of Rambus' affirmative defenses. A hearing on these motions to strike is currently set for October 26, 2007.

On April 4, 2007, Samsung filed a motion for summary judgment on the ground that findings in the proceeding before the U.S. District Court in the Eastern District of Virginia (described below) should be given collateral estoppel effect in this action. A hearing on each of those motions was held on May 24, 2007. On June 19, 2007, the California court issued an order deferring any ruling on Samsung's motion for summary judgment until after the Federal Circuit

Page 154 of 170

Table of Contents

issues its decision in the matter Rambus is appealing from the U.S. District Court in the Eastern District of Virginia, described below.

On April 24, 2007, the California court ordered that Hynix v Rambus, Case No. C 00-20905 RMW, *Rambus Inc. v. Samsung Electronics Co. Ltd. et al.,* Case No. 05-02298 RMW, *Rambus Inc. v. Hynix Semiconductor Inc., et al.,* Case No. 05-00334, and *Rambus Inc. v. Micron Technology, Inc., et al.,* Case No. C 06-00244 RMW, shall have a coordinated trial beginning on January 22, 2008, of certain common claims and defenses related to the claims set to be tried in the third phase of the *Hynix* 00-20905 action. The California court also coordinated these cases for certain other purposes, including discovery and preparation (but not trial) of the patent infringement claims and defenses. A claim construction hearing is currently scheduled for March 25-26, 2008, and one or more trial on Rambus' patent infringement claims is set to begin on January 19, 2009.

As a result of the coordinated proceedings, the California court permitted supplemental briefing on issues relating to what effect, if any, the FTC opinion has on the claims to tried in the January 22, 2008 trial. On June 28, 2007, Micron, Nanya, and Samsung filed (1) a joint motion seeking to give prima facie evidentiary effect to certain findings by the FTC in the January 22, 2008 trial; and (2) a joint brief in support of Hynix's motion for summary judgment in the *Hynix* 00-20905 action on Hynix's state unfair competition claim and equitable estoppel defense based on findings made by the FTC. Rambus' filed opposition briefs to these motions on July 16, 2007, and Micron, Nanya, and Samsung filed reply briefs on July 23 and 24, 2007. Oral argument on these motions was held on August 3, 2007. The Court took the motions under submission, and no opinion has issued to date on these motions.

### Samsung Litigation

#### U.S District Court in the Northern District of California

On June 6, 2005, Rambus filed a lawsuit against Samsung in the U.S. District Court in the Northern District of California. The suit alleges that Samsung's manufacture, use and sale of SDRAM and DDR SDRAM parts infringe 9 of Rambus' patents. Samsung has denied Rambus' claims and asserted counterclaims for non-infringement, invalidity and unenforceability of the patents, violations of various antitrust and unfair competition statutes, breach of license, and breach of duty of good faith and fair dealing. Samsung has also counterclaimed that Rambus aided and abetted breach of fiduciary duty and intentionally interfered with Samsung's contract with a former employee by knowingly hiring a former Samsung employee who allegedly misused proprietary Samsung information. On July 15, 2005, Rambus denied Samsung's counterclaims and moved to dismiss certain of Samsung's defenses and counterclaims. On October 28, 2005, the California court granted Rambus' motion and gave Samsung leave to amend its pleading. On November 17, 2005, Samsung filed amended defenses and counterclaims.

On February 21, 2006, Rambus filed a motion to dismiss certain of Samsung's amended defenses and counterclaims. A hearing on Rambus' motion was held on April 7, 2006. On January 4, 2007, the California court granted Rambus' motion with leave to amend. On January 24, 2007, Samsung filed second amended defenses and counterclaims.

Page 155 of 170

Table of Contents

Following a case management conference held on October 6, 2006, the California court temporarily stayed this action until February 2, 2007, upon which the stay automatically expired. On March 23, 2007, Rambus filed a motion to dismiss certain of Samsung's amended counterclaims. The court has not yet ruled on Rambus' motion. On July 9, 2007, Rambus filed its reply to Samsung's amended counterclaims. On August 2, 2007, Samsung filed a motion to strike Rambus' infringement counterclaims in reply. A hearing on Samsung's motion is currently set for October 26, 2007.

On April 4, 2007, Samsung filed a motion for summary judgment on the ground that findings in the proceeding before the U.S. District Court in the Eastern District of Virginia (described below) should be given collateral estoppel effect in this action. A hearing on each of those motions was held on May 24, 2007. On June 19, 2007, the California court issued an order deferring any ruling on Samsung's motion for summary judgment until after the Federal Circuit issues its decision in the matter Rambus is appealing from the U.S. District Court in the Eastern District of Virginia, described below.

On April 24, 2007, the California court ordered that *Hynix v Rambus*, Case No. C 00-20905 RMW, *Rambus Inc. v. Samsung Electronics Co. Ltd. et al.,* Case No. 05-02298 RMW, *Rambus Inc. v. Hynix Semiconductor Inc., et al.,* Case No. 05-00334, and *Rambus Inc. v. Micron Technology, Inc., et al.,* Case No. C 06-00244 RMW, shall have a coordinated trial beginning on January 22, 2008, of certain common claims and defenses related to the claims set to be tried in the third phase of the Hynix 00-20905 action. The California court also coordinated these cases for certain other purposes, including discovery and preparation (but not trial) of the patent infringement claims and defenses. A claim construction hearing is currently scheduled for March 25-26, 2008, and one or more trials on Rambus' patent infringement claims is set to begin on January 19, 2009.

As a result of the coordinated proceedings, the California court permitted supplemental briefing on issues relating to what effect, if any, the FTC opinion has on the claims to tried in the January 22, 2008 trial. On June 28, 2007, Micron, Nanya, and Samsung filed (1) a joint motion seeking to give prima facie evidentiary effect to certain findings by the FTC in the January 22, 2008 trial; and (2) a joint brief in support of Hynix's motion for summary judgment in the *Hynix* 00-20905 action on Hynix's state unfair competition claims and equitable estoppel defenses based on findings made by the FTC. Rambus filed opposition briefs to these motions on July 16, 2007. Micron, Nanya, and Samsung filed reply briefs on July 23 and 24, 2007. Oral argument on these motions was held on August 3, 2007. The Court took the motions under submission, and no opinion has issued to date on these motions.

### U.S District Court in the Eastern District of Virginia

On June 7, 2005, Samsung sued Rambus in the U.S. District Court in the Eastern District of Virginia seeking a declaratory judgment that four Rambus patents are invalid, unenforceable and/or not infringed. Rambus answered the complaint, disputing Samsung's claims. Rambus granted Samsung two separate covenants not to sue Samsung for infringement of the four patents for which Samsung sought declaratory relief: one covenant for U.S. patent nos. 5,954,804 and 6,032,214, and a second covenant for U.S. patent nos. 5,953,263 and 6,034,918.

Table of Contents

On September 27, 2005, Rambus filed a motion to dismiss this action on the ground that the two covenants not to sue divested the Virginia court of subject matter jurisdiction. On October 3, 2005, Rambus submitted an offer to Samsung to pay its attorneys' fees; Rambus believes that this offer mooted any claim by Samsung for attorneys' fees. Samsung did not accept the offer and opposed Rambus' motion to dismiss on October 5, 2005, arguing that it was entitled to a judicial determination of whether this litigation was exceptional warranting the payment of its attorneys' fees under 35 U.S.C. § 285. Samsung sought to recover more than $476,000 in attorneys' fees. On November 8, 2005, the Virginia court issued orders (1) granting Rambus' motion to dismiss with respect to Samsung's claims for declaratory judgment but denying the motion with respect to Samsung's claim for attorney's fees pursuant to 35 U.S.C. § 285; and (3) ordering that the *Rambus v. Infineon* record shall be made part of the record in this action for purposes of deciding the exceptional case issue.

Rambus notified the Virginia court that it made a Rule 68 offer of judgment to Samsung on November 30, 2005, and that this offer divested the court of any remaining subject matter jurisdiction. Samsung did not accept the Rule 68 offer. A hearing on the jurisdiction issue and supplemental argument on the exceptional case issue was held on February 21, 2006. The court subsequently ordered that the *Hynix v. Rambus* record from the phase one unclean hands trial in California should be made part of the record in the Samsung action and took the jurisdictional issue and the exceptional case issue under submission.

On July 19, 2006, the Virginia court issued orders filed the day before on the jurisdictional and exceptional case issues. The court found that: (1) it had subject matter jurisdiction over Samsung's motions; (2) Samsung is a "prevailing party;" (3) Rambus had spoliated evidence in anticipation of litigation against DRAM manufacturers such as Samsung; (4) Rambus' spoliation rendered the case exceptional; (5) Rambus did not assert its counterclaims in subjective bad faith or for the purpose of vexation; (6) Rambus' counterclaims were not objectively baseless at the time they were filed; and (7) Samsung was not entitled to an award of attorneys' fees.

Rambus filed a notice of appeal to the Federal Circuit on August 16, 2006. On September 11, 2006, Rambus moved for a preliminary ruling that it lacked standing to appeal on the ground that Rambus was the prevailing party on the issue of Samsung's request for attorneys' fees and that the Virginia court's determinations could have no future preclusive effect. Samsung opposed Rambus' motion. In an order dated October 12, 2006, the Federal Circuit denied Rambus' motion for preliminary ruling without prejudice.

Rambus filed its opening appellate brief on December 5, 2006, Samsung filed its opposition brief on March 2, 2007, and Rambus filed its reply brief on April 2, 2007. Oral argument was heard on August 7, 2007. No opinion has issued to date.

*Delaware Chancery Court*

On June 23, 2005, Samsung sued Rambus in the Delaware Chancery Court asserting claims similar to its counterclaims in the Northern District of California action. The suit seeks a declaration that Rambus patents claiming a priority date prior to the termination of its former employee's employment with Samsung be declared unenforceable as against Samsung as a result of Samsung's allegations charging Rambus with aiding and abetting breach of fiduciary duty and intentional interference with contract.

Page 157 of 170

Table of Contents

Rambus filed an answer on July 18, 2005, denying Samsung's claims. On September 6, 2006, Rambus filed a motion for summary judgment on the ground that Samsung's claims are barred because it released its claims pursuant to the patent license agreement between Rambus and Samsung executed in 2000. At the conclusion of oral argument on December 4, 2006, the Delaware Chancery Court indicated that it would deny Rambus' motion for summary judgment without prejudice to the reassertion of the motion after the completion of further discovery and that it would stay the action until after the next status conference in the actions with similar counterclaims pending in the Northern District of California. At the request of the Delaware Chancery Court, the parties submitted separate updates on the status of this matter on September 7, 2007.

### Indirect Purchaser Class Action

On August 10, 2006, the first of nine class action lawsuits were filed against Rambus in 2006 alleging violations of federal and state antitrust laws, violations of state consumer protection laws, and various common law claims based almost entirely on the same conduct which was the subject of the FTC's July 31, 2006, opinion. Five of these lawsuits were filed in the Northern District of California (*Chernomorets v. Rambus,* C-06-4852 JCS (filed August 10, 2006), *Grande v. Rambus,* C-06-4853 RS (filed August 10, 2006), *Seley v. Rambus,* C-06-4937 PVT (filed August 17, 2006), *Alvarez v. Rambus,* C-06-4997 RS (filed August 18, 2006), *Winder v. Rambus,* C-06-5455 RS (filed September 6, 2006)). Those five cases have been consolidated under the caption, *In re Rambus Antitrust Litigation,* 06-4852 RMW (N.D. Cal.). On January 12, 2007, plaintiffs filed a consolidated complaint. The complaint seeks injunctive and declaratory relief, disgorgement, restitution and compensatory and punitive damages in an unspecified amount, and attorneys' fees and costs. On March 28, 2007, Rambus filed a motion to dismiss the consolidated complaint. Plaintiffs filed an opposition brief on May 25, 2007, and Rambus filed a reply on June 25, 2007. At a hearing on Rambus' motion on July 27, 2007, the California court heard oral argument and took the matter under submission. No final order has issued to date.

Two substantially similar class action lawsuits were filed in the Southern District of New York (*Ratanyake v. Rambus,* 06cv6418 (filed August 23, 2006) and *Rhodes v. Rambus,* 06cv6551 (filed August 30, 2006)), and another was filed in the Eastern District of Michigan (*Austin v. Rambus,* 06cv13666 (filed August 17, 2006)). Pursuant to agreement of the parties, these three cases have been dismissed without prejudice to refiling in the Northern District of California.

A ninth substantially similar class action lawsuit was filed on April 2, 2007, in the Northern District of California. That case was consolidated into the *In re Rambus Antitrust Litigation* proceeding pursuant to the California court's earlier consolidation order.

Table of Contents

### European Commission Competition Directorate-General

On or about April 22, 2003, Rambus was notified by the European Commission Competition Directorate-General (Directorate) (the "European Commission") that it had received complaints from Infineon and Hynix. Rambus answered the ensuing requests for information prompted by those complaints on June 16, 2003. Rambus obtained a copy of Infineon's complaint to the European Commission in late July 2003, and on October 8, 2003, at the request of the European Commission, filed its response. The European Commission sent Rambus a further request for information on December 22, 2006, which Rambus answered on January 26, 2007. On August 1, 2007, Rambus received a statement of objections from the European Commission. The statement of objections alleges that through Rambus' participation in the JEDEC standards setting organization and subsequent conduct, Rambus violated European Union competition law. Rambus is evaluating the statement of objections and plans to respond in due course.

On June 18, 2004, Rambus requested that the European Commission investigate the collusive activities of Infineon/Siemens, Hynix, and Micron, as described in Rambus' complaint filed in the "price fixing" case in the San Francisco Superior Court. On March 10, 2005, Rambus received a responsive letter from the EU Directorate requesting certain additional information. Rambus replied to this request on May 23, 2005. On March 29, 2005, as part of its settlement with Infineon, Rambus withdrew its complaint to the extent that it was directed to Infineon/Siemens. Rambus received a second letter from the European Commission on August 3, 2005, requesting further information following the settlement agreement with Infineon. Rambus responded on August 23, 2005. In a letter dated May 24, 2007, Rambus notified the European Commission that it was withdrawing its complaint without prejudice. This case is now closed.

### Price-Fixing Case

#### Superior Court of California for the County of San Francisco

On May 5, 2004, Rambus filed a lawsuit against Micron, Hynix, Infineon and Siemens in San Francisco Superior Court (the "San Francisco court") seeking damages for conspiring to fix prices (California Bus. & Prof. Code §§ 16720 et seq.), conspiring to monopolize under the Cartwright Act (California Bus. & Prof. Code §§ 16720 et seq.), intentional interference with prospective economic advantage, and unfair competition (California Bus. & Prof. Code §§ 17200 et seq.). This lawsuit alleges that there were concerted efforts beginning in the 1990's to deter innovation in the DRAM market and to boycott Rambus and/or deter market acceptance of Rambus' RDRAM product.

Pursuant to its settlement with Infineon, Rambus dismissed with prejudice Infineon and Siemens from this action on March 21, 2005. On May 23, 2005, Hynix filed a motion to compel arbitration of Rambus' dispute with the Hynix defendants. The San Francisco court denied Hynix's motion to compel arbitration at a hearing on July 12, 2005.

On June 15, 2005, after receiving access to documents produced by Micron and Hynix to the Department of Justice (the "DOJ") Rambus added three Samsung-related entities as defendants. On September 29, 2005, Samsung filed a motion to compel arbitration of Rambus' dispute with the Samsung defendants. The San Francisco court denied Samsung's motion on October 31, 2005, and entered its Statement of Decision on January 3, 2006.

Table of Contents

Hynix and Samsung appealed the San Francisco court's denial of their respective motions to compel arbitration. The California appellate court heard oral argument on November 15, 2006, and on January 3, 2007, it affirmed the San Francisco court's denial of the motions to compel arbitration. On February 13, 2006, Hynix filed, and Samsung joined, a petition for review of the appellate court's affirmance in the California Supreme Court. On March 21, 2007, the California Supreme Court denied the petition for review. On March 26, 2007, the California appellate court issued a remittitur returning full jurisdiction of the case to the San Francisco court. On June 20, 2007, Hynix filed a petition seeking review of the denial of its motion to compel arbitration by the U.S. Supreme Court. Rambus filed an opposition to this petition on August 17, 2007 and Hynix filed a reply on September 5, 2007. No action on Hynix's petition has been taken to date.

The San Francisco court had held that certain limited discovery could be conducted during the pendency of the arbitration appeals. Now that the denial of arbitration has been finally affirmed by the state courts, full discovery is ongoing. On April 2, 2007, Hynix filed a motion for summary judgment on the ground that Rambus' claims should have been brought as compulsory counterclaims in its pending patent infringement litigation with Hynix. After hearing oral argument on Hynix's motion on July 16, 2007, the San Francisco court denied Hynix's motion for summary judgment.

### Alberta Telecommunications Research Centre Litigation

On November 15, 2005, Alberta Telecommunications Research Centre, dba TR Labs, a Canadian company, filed suit against Rambus in the U.S. District Court in the Eastern District of Virginia. The complaint alleges that Alberta is the owner of U.S. patent no. 5,361,277 (the "'277 patent"), and asserts claims for interferences-in-fact pursuant to 35 U.S.C. § 291 between the '277 patent and Rambus' U.S. patent nos. 5,243,703 (the "'703 patent") and 5,954,804 (the "'804 patent"); infringement of the '277 patent by Rambus; and unjust enrichment. Alberta seeks an order assigning the claims of the '703 and '804 patent to Alberta, disgorgement of Rambus' profits from licensing the '703 and '804 patents, compensatory and punitive damages, attorneys' fees, and injunctive relief. Rambus filed an answer on February 10, 2006, denying Alberta's claims.

Rambus moved to dismiss Alberta's claims on January 26, 2006, and to transfer the action to the Northern District of California. On April 13, 2006, the Virginia court ordered that this matter be transferred to the Northern District of California in its entirety (without deciding Rambus' motion to dismiss). The case was filed in the Northern District of California on April 17, 2006. On October 23, 2006, the California court granted in part Rambus' motion to dismiss with leave to amend. Alberta filed an amended complaint on November 8, 2006, and Rambus moved to dismiss the amended complaint 19 days later. On August 2, 2007, the California court denied Rambus' motion to dismiss. On August 30, 2007, Rambus filed an answer denying the allegations in the compliant. Discovery in this case is ongoing.

### General Litigation Matters

The Company is a party from time to time to lawsuits. Litigation, in general, and intellectual property and securities litigation in particular, can be expensive and disruptive to normal business operations. Moreover, the results of legal proceedings are difficult to predict. For the year ended December 31, 2006, the Company has accrued a total of $20.4 million as its best estimate of settlements and/or judgments in the cases noted above when such outcome is deemed by the Company as probable, as that term is defined in SFAS 5, including the $18.0 million to settle the shareholder class action lawsuit related to the stock option investigation.

In addition to all of the litigation described above, participants in the DRAM and controller markets continue to adopt Rambus technologies into various products. Rambus has notified many of these companies of their use of Rambus technology and continues to evaluate how to proceed on these matters. There can be no assurance that any ongoing or future litigation will be successful. Rambus spends substantial company resources defending its intellectual property in litigation, which may continue for the foreseeable future given the multiple pending litigations. The outcomes of these litigations, as well as any delay in their resolution, could affect Rambus' ability to license its intellectual property going forward.

Table of Contents

## 18. Subsequent Events

Under IRC Section 409A (and, as applicable, under California and other state tax laws), repriced stock options vesting after December 31, 2004 ("409A Affected Options") subject the option holder to a penalty tax. If the 409A affected options are amended to increase the exercise price to the market price on the actual grant date, these options would not be subject to taxation under IRC Section 409A. Under IRS regulations, these option agreements had to be completed by December 31, 2006 for anyone who was an executive officer when he or she received 409A affected options. Only one of the Company's option holders was subject to the December 31, 2006 deadline and had his options amended to increase the exercise price.

Because virtually all holders of options for which the measurement dates and grant prices were adjusted in connection with the restatement (see Note 3, "Restatement of Consolidated Financial Statements"), were not involved in the original stock option granting process, the Company decided to compensate substantially all current and former non-executive employees for the 409A penalty taxes (grossed up for taxes on the compensation) imposed on them in 2006 for revised options that were exercised in 2006. Because the decision to assume the liability was not made by management and the Board of Directors until March 2007 the Company will record approximately $6.8 million of compensation expense in the first quarter of 2007. The Company has also notified all employees that it will not provide a similar benefit for 2007 and forward penalties that may be assessed by the IRS or the states.

In February 2007, the Compensation Committee approved the granting of 100,000 restricted stock units to Satish Rishi, the Company's Chief Financial Officer. The restricted stock units will be granted as soon as practicable after the Company becomes current with its SEC filings and registers its 2006 Equity Incentive Plan under which these units would be granted.

In June 2007, an appellate court in Germany notified the Company that it had denied the Company's appeal to reduce the amount owed for court costs related to Rambus' European patent case with Infineon. The Company recorded its best estimate of the liability from this case in September 2006. Because the amount was subsequently adjusted and the financial statements had not yet been issued, the Company increased its accrual for these court costs for the year ended December 31, 2006 in connection with the appellate court's ruling. (See Note 17, "Litigation and Asserted Claims" for more information).

In the third quarter of 2007, the Company reached a preliminary agreement in principle with the lead plaintiffs in the class action litigation related to the stock option investigation (see Note 17, "Litigation and Asserted Claims"). Because the complaints giving rise to the settlement of this litigation were filed in the third quarter of 2006 and the financial statements for that period had not yet been issued, the potential settlement amount of $18.0 million is recorded in the third quarter of 2006 in accordance with Statement of Financial Accounting Standards No. 5 "Accounting for Contingencies" ("SFAS 5"). This amount is included in the Company's statement of operations in the line item "Costs of restatement and related legal activities."

On August 17, 2007, the Company was notified by the Nasdaq Listings Qualification Panel that it was given an extension until October 17, 2007 to become current on all of its delinquent SEC filings for fiscal periods in 2006 and 2007.

Page 161 of 170

Form 10-K

Table of Contents

Supplementary Financial Data

### RAMBUS INC.
### CONSOLIDATED SUPPLEMENTARY FINANCIAL DATA
#### Quarterly Statements of Operations (As Previously Reported)
#### (Unaudited)

| (in thousands, except for per share amounts) | Dec. 31, 2006 (3) | Sept. 30, 2006 (3) | June 30, 2006 (3) | March 31, 2006 As previously reported (2) | Dec. 31, 2005 As previously reported (2) | Sept. 30, 2005 As previously reported (2) | June 30, 2005 As previously reported (2) | March 31, 2005 As previous reported (2 |
|---|---|---|---|---|---|---|---|---|
| Revenue: | | | | | | | | |
| Contract Revenues | $ 8,577 | $ 4,422 | $ 7,745 | $ 5,564 | $ 6,904 | $ 7,983 | $ 5,390 | $ 6,60 |
| Royalties | 44,013 | 41,523 | 41,699 | 41,681 | 34,685 | 28,031 | 34,595 | 33,01 |
| Total revenues | 52,590 | 45,945 | 49,444 | 47,245 | 41,589 | 36,014 | 39,985 | 39,61 |
| Costs and expenses: | | | | | | | | |
| Cost of contract revenues | 7,382 | 6,121 | 9,521 | 6,765 | 4,742 | 4,455 | 4,965 | 5,60 |
| Research and development | 17,424 | 17,695 | 15,841 | 16,752 | 11,848 | 10,598 | 9,934 | 8,59 |
| Marketing, general and administrative | 22,692 | 24,114 | 32,883 | 24,192 | 17,687 | 17,033 | 19,482 | 20,49 |
| Costs of restatement and related legal activities | 5,746 | 23,796 | 1,894 | — | — | — | — | — |
| Total costs and expenses (1) | 53,244 | 71,726 | 60,139 | 47,709 | 34,277 | 32,086 | 34,381 | 34,69 |
| Operating Income (loss) | (654) | (25,781) | (10,695) | (464) | 7,312 | 3,928 | 5,604 | 4,91 |
| Interest and other income, net (3) | 2,344 | 4,472 | 4,076 | 3,445 | 8,084 | 21,202 | 3,414 | 2,12 |
| Income (loss) before income taxes | 1,690 | (21,309) | (6,619) | 2,981 | 15,396 | 25,130 | 9,018 | 7,04 |
| Provision for (benefit from) income taxes | (379) | 1,337 | (12,728) | 1,164 | 6,015 | 10,634 | 3,658 | 2,60 |
| Net income (loss) | $ 2,069 | $ (22,646) | $ 6,109 | $ 1,817 | $ 9,381 | $ 14,496 | $ 5,360 | $ 4,44 |
| Net income (loss) per share - basic | $ 0.02 | $ (0.22) | $ 0.06 | $ 0.02 | $ 0.09 | $ 0.15 | $ 0.05 | $ 0.0 |
| Net income (loss) per share - diluted | $ 0.02 | $ (0.22) | $ 0.06 | $ 0.02 | $ 0.09 | $ 0.14 | $ 0.05 | $ 0.0 |
| Shares used in per share calculations - basic | 103,806 | 103,792 | 103,414 | 101,142 | 99,688 | 99,944 | 99,596 | 100,28 |
| Shares used in per share calculations - diluted | 108,209 | 103,792 | 110,495 | 109,332 | 103,561 | 103,211 | 103,675 | 105,91 |

(1)  Stock-based compensation included in -

| | Dec. 31, 2006 | Sept. 30, 2006 | June 30, 2006 | March 31, 2006 | Dec. 31, 2005 | Sept. 30, 2005 | June 30, 2005 | March 31, 2005 |
|---|---|---|---|---|---|---|---|---|
| Cost of contract revenues | $ 1,805 | $ 1,844 | $ 2,524 | $ 1,351 | $ — | $ — | $ — | $ — |
| Research and development | $ 3,460 | $ 4,269 | $ 3,003 | $ 2,700 | $ — | $ — | $ — | $ — |
| Marketing, general and administrative | $ 4,421 | $ 4,366 | $ 3,822 | $ 4,324 | $ — | $ 268 | $ 1,281 | $ 1,14 |

(2)  Fiscal year 2006 amounts reflect the application SFAS 123(R) to account for stock-based compensation while the fiscal year 2005 amounts reflect the application of APB 25. Therefore, the results are not comparable.

(3)  Interest income and other income, net in the fourth quarter of 2006 includes $2.4 million related to the acceleration of the amortization of note issuance cost in connection with the notice of acceleration relating to the convertible notes (see Note 16, "Convertible Notes").

### RAMBUS INC.
### CONSOLIDATED SUPPLEMENTARY FINANCIAL DATA
#### Quarterly Statements of Operations (Adjustments)
#### (Unaudited)

| (in thousands, except for per share amounts) | Dec. 31, 2006 Adjustments | Sept. 30, 2006 Adjustments | June 30, 2006 Adjustments | March 31, 2006 Adjustments | Dec. 31, 2005 Adjustments | Sept. 30, 2005 Adjustments | June 30, 2005 Adjustments | March 31, 2005 Adjustment: |
|---|---|---|---|---|---|---|---|---|

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue: | | | | | | | | | | | | |
| Contract Revenues | $ | — | $ | — | $ | — | $ | 100 | $ | — | $ | — | — |
| Royalties | | — | | — | | — | | — | | — | | — | — |
| Total revenues | | — | | — | | — | | 100 | | — | | — | — |
| Costs and expenses: | | | | | | | | | | | | |
| Cost of contract revenues | | — | | — | | — | | 603 | | 869 | | 897 | 1,205 |
| Research and development | | — | | — | | — | | 1,265 | | 2,171 | | 2,132 | 1,847 |
| Marketing, general and administrative | | — | | — | | — | | 680 | | 1,464 | | 1,387 | 1,612 |
| Costs of restatement and related legal activities | | — | | — | | — | | — | | — | | — | — |
| Total costs and expenses (1) | | — | | — | | — | | 2,548 | | 4,504 | | 4,416 | 4,664 |
| Operating income (loss) | | — | | — | | — | | (2,448) | | (4,504) | | (4,416) | (4,664) |
| Interest and other income, net | | — | | — | | — | | — | | — | | — | — |
| Income (loss) before income taxes | | — | | — | | — | | (2,448) | | (4,504) | | (4,416) | (4,664) |
| Provision for (benefit from) income taxes | | — | | — | | — | | (1,283) | | (564) | | (1,578) | (9,249) |
| Net income (loss) | $ | — | $ | — | $ | — | $ | (1,165) $ | (3,940) $ | (2,838) $ | 4,585 |
| Net income (loss) per share - basic | $ | — | $ | — | $ | — | $ | (0.01) $ | (0.04) $ | (0.03) $ | 0.05 |
| Net income (loss) per share - diluted | $ | — | $ | — | $ | — | $ | (0.01) $ | (0.04) $ | (0.03) $ | 0.05 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (1)  Stock-based compensation included in - | | | | | | | | | | | | |
| Cost of contract revenues | $ | — | $ | — | $ | — | $ | 631 $ | 834 $ | 860 $ | 991 $ | 1,212 |
| Research and development | $ | — | $ | — | $ | — | $ | 1,470 $ | 2,156 $ | 2,116 $ | 1,953 $ | 1,831 |
| Marketing, general and administrative | $ | — | $ | — | $ | — | $ | 533 $ | 1,462 $ | 1,487 $ | 1,256 $ | 1,613 |

http://www.sec.gov/Archives/edgar/data/917273/000119312507201474/d10k.htm                    10/24/2007

Table of Contents

**RAMBUS INC.**
**CONSOLIDATED SUPPLEMENTARY FINANCIAL DATA**
**Quarterly Statements of Operations (As Restated)**
**(Unaudited)**

| (in thousands, except for per share amounts) | Dec. 31, 2006 (3) | Sept. 30, 2006 (3) | June 30, 2006 (3) | March 31, 2006 (3) | Dec. 31, 2005 | Sept. 30, 2005 | June 30, 2005 | March 3 2005 |
|---|---|---|---|---|---|---|---|---|
| | | | | As restated(2) | As restated(2) | As restated(2) | As restated(2) | As restate |
| Revenue: | | | | | | | | |
| Contract Revenues | $ 8,577 | $ 4,422 | $ 7,745 | $ 5,664 | $ 6,904 | $ 7,983 | $ 5,390 | $ 6,( |
| Royalties | 44,013 | 41,523 | 41,699 | 41,681 | 34,685 | 28,031 | 34,595 | 33,( |
| Total revenues | 52,590 | 45,945 | 49,444 | 47,345 | 41,589 | 36,014 | 39,985 | 39,( |
| Costs and expenses: | | | | | | | | |
| Cost of contract revenues | 7,382 | 6,121 | 9,521 | 7,368 | 5,611 | 5,352 | 5,962 | 6,{ |
| Research and development | 17,424 | 17,695 | 15,841 | 18,017 | 14,019 | 12,730 | 11,928 | 10,4 |
| Marketing, general and administrative | 22,692 | 24,114 | 32,883 | 24,872 | 19,151 | 18,420 | 20,737 | 22,1 |
| Costs of restatement and related legal activities | 5,746 | 23,796 | 1,894 | — | — | — | — | — |
| Total costs and expenses (1) | 53,244 | 71,726 | 60,139 | 50,257 | 38,781 | 36,502 | 38,627 | 39,: |
| Operating income (loss) | (654) | (25,781) | (10,695) | (2,912) | 2,808 | (488) | 1,358 | : |
| Interest and other income, net (4) | 2,344 | 4,472 | 4,076 | 3,445 | 8,084 | 21,202 | 3,414 | 2,} |
| Income (loss) before income taxes | 1,690 | (21,309) | (6,619) | 533 | 10,892 | 20,714 | 4,772 | 2,: |
| Provision for (benefit from) income taxes | (379) | 1,337 | (12,728) | (119) | 5,451 | 9,056 | 1,956 | (6,( |
| Net income (loss) | $ 2,069 | $ (22,646) | $ 6,109 | $ 652 | $ 5,441 | $ 11,658 | $ 2,816 | $ 9,( |
| Net income (loss) per share - basic | $ 0.02 | $ (0.22) | $ 0.06 | $ 0.01 | $ 0.05 | $ 0.12 | $ 0.03 | $ 0 |
| Net income (loss) per share - diluted | $ 0.02 | $ (0.22) | $ 0.06 | $ 0.01 | $ 0.05 | $ 0.11 | $ 0.03 | $ 0 |
| Shares used in per share calculations - basic | 103,806 | 103,792 | 103,414 | 101,142 | 99,688 | 99,944 | 99,596 | 100,: |
| Shares used in per share calculations - diluted | 108,209 | 103,792 | 110,495 | 109,289 | 103,179 | 102,982 | 103,209 | 105,: |

(1) Stock-based compensation included in -

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cost of contract revenues | $ 1,805 | $ 1,844 | $ 2,524 | $ 1,982 | $ 834 | $ 860 | $ 991 | 1,: |
| Research and development | $ 3,460 | $ 4,269 | $ 3,003 | $ 4,170 | $ 2,156 | $ 2,116 | $ 1,953 | 1,{ |
| Marketing, general and administrative | $ 4,421 | $ 4,366 | $ 3,822 | $ 4,857 | $ 1,462 | $ 1,755 | $ 2,537 | 2,: |

(2) See Note 3 "Restatement of Consolidated Financial Statements," of the Notes to Consolidated Financial Statements.
(3) Fiscal year 2006 amounts reflect the application SFAS 123(R) to account for stock-based compensation while the fiscal year 2005 amounts reflect the application of APB 25. Therefore, the results are not comparable.
(4) Interest income and other income, net in the fourth quarter of 2006 includes $2.4 million related to the acceleration of the amortization of note issuance cost in connection with the notice of acceleration relating to our convertible notes (see Note 16, "Convertible Notes").

Page 163 of 170

Table of Contents

**RAMBUS INC.**
**CONSOLIDATED SUPPLEMENTARY FINANCIAL DATA**
**Quarterly Balance Sheets (As Restated)**
**(Unaudited)**

| (in thousands, except per share amounts) | March 31, 2006 As restated(1) | Dec. 31, 2005 As restated(1) | Sept. 30, 2005 As restated(1) | June 30, 2005 As restated(1) | March 31, 2005 As restated(1) |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Current assets: | | | | | |
| Cash and cash equivalents | $ 98,223 | $ 42,391 | $ 56,144 | $ 69,929 | $ 208,021 |
| Marketable securities | 173,164 | 118,416 | 88,973 | 101,470 | 96,802 |
| Accounts receivable | 1,808 | 954 | 1,329 | 1,667 | 1,580 |
| Unbilled receivables | — | — | — | — | 2,016 |
| Deferred and prepaid taxes | 3,834 | 3,827 | 13,703 | 13,703 | 13,710 |
| Prepaids and other current assets | 6,469 | 4,419 | 5,413 | 5,686 | 4,149 |
| Total current assets | 283,498 | 170,007 | 165,562 | 192,455 | 326,278 |
| Marketable securities, long term | 119,264 | 194,583 | 242,960 | 299,325 | 155,360 |
| Restricted cash | 2,298 | 2,279 | 2,274 | 2,302 | 5,076 |
| Deferred taxes, long term | 98,710 | 98,544 | 93,234 | 101,265 | 102,137 |
| Purchased intangible assets, net | 22,351 | 23,650 | 22,294 | 23,437 | 20,844 |
| Property and equipment, net | 20,174 | 19,622 | 21,257 | 22,489 | 18,890 |
| Goodwill | 3,315 | 3,315 | 3,315 | 3,295 | 581 |
| Other assets | 4,166 | 3,953 | 4,895 | 7,449 | 7,837 |
| Total assets | $ 553,776 | $ 515,953 | $ 555,737 | $ 652,017 | $ 637,003 |
| **LIABILITIES** | | | | | |
| Current liabilities: | | | | | |
| Accounts payable | 6,558 | 4,374 | 4,110 | 12,398 | 8,837 |
| Accrued salaries and benefits | 7,850 | 5,894 | 4,906 | 3,898 | 5,425 |
| Accrued litigation expenses | 6,307 | 4,633 | 5,721 | 4,116 | 5,309 |
| Other accrued liabilities | 3,744 | 4,538 | 4,462 | 4,232 | 2,170 |
| Deferred revenue | 1,369 | 973 | 4,963 | 8,035 | 13,447 |
| Total current liabilities | 25,828 | 20,412 | 24,162 | 32,679 | 35,188 |
| Convertible notes | 160,000 | 160,000 | 195,000 | 300,000 | 300,000 |
| Deferred revenue, less current portion | 7,884 | 8,317 | 7,905 | 6,630 | 5,314 |
| Other long-term liabilities | 2,826 | 3,757 | 4,173 | 4,124 | 2,053 |
| Total liabilities | 196,538 | 192,486 | 231,240 | 343,433 | 342,555 |
| Commitments and contingencies | | | | | |
| **STOCKHOLDERS' EQUITY** | | | | | |
| Convertible preferred stock, $.001 par value: | — | — | — | — | — |
| Common Stock, $.001 par value | 103 | 99 | 100 | 100 | 99 |
| Additional paid in capital | 511,784 | 478,519 | 483,579 | 483,675 | 478,970 |
| Deferred stock-based compensation | — | (20,122) | (24,770) | (29,655) | (35,680) |
| Accumulated deficit | (152,928) | (133,382) | (132,850) | (144,508) | (147,324) |
| Accumulated other comprehensive loss | (1,721) | (1,647) | (1,562) | (1,028) | (1,617) |
| Total stockholders' equity | 357,238 | 323,467 | 324,497 | 308,584 | 294,448 |
| Total liabilities and stockholders' equity | $ 553,776 | $ 515,953 | $ 555,737 | $ 652,017 | $ 637,003 |

(1)  See Note 3 "Restatement of Consolidated Financial Statements," of the Notes to Consolidated Financial Statements.

Table of Contents

**(a)(2) Financial Statement Schedules**

    Schedules not listed above have been omitted because they are not applicable, not required, or the information required to be set forth therein is included in the consolidated financial statements or notes thereto.

**(a)(3) Exhibits**

    See Exhibit Index immediately following the signature pages.

Page 165 of 170

Table of Contents

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

RAMBUS INC.

Date: September 13, 2007

By: /s/ Satish Rishi
    Satish Rishi
    Sr. Vice President, Finance and Chief Financial
    Officer

Page 166 of 170

Table of Contents

## POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below hereby constitutes and appoints Satish Rishi as his true and lawful agent, proxy and attorney-in-fact, with full power of substitution and resubstitution, for him and in his name, place and stead, in any and all capacities, to (i) act on, sign, and file with the Securities and Exchange Commission any and all amendments to this Annual Report on Form 10-K, together with all schedules and exhibits thereto, (ii) act on, sign, and file such certificates, instruments, agreements and other documents as may be necessary or appropriate in connection therewith, and (iii) take any and all actions that may be necessary or appropriate to be done, as fully for all intents and purposes as he might or could do in person, hereby approving, ratifying and confirming all that such agent, proxy and attorney-in-fact or any of his substitutes may lawfully do or cause to be done by virtue thereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/  HAROLD HUGHES<br>Harold Hughes | Chief Executive Officer, President and Director (Principal Executive Officer) | September 13, 2007 |
| /s/  SATISH RISHI<br>Satish Rishi | Sr. Vice President, Finance and Chief Financial Officer (Principal Financial and Accounting Officer) | September 13, 2007 |
| /s/  KEVIN KENNEDY<br>Kevin Kennedy | Chairman of the Board of Directors | September 13, 2007 |
| /s/  J. THOMAS BENTLEY<br>J. Thomas Bentley | Director | September 13, 2007 |
| /s/  SUNLIN CHOU<br>Sunlin Chou | Director | September 13, 2007 |
| /s/  BRUCE DUNLEVIE<br>Bruce Dunlevie | Director | September 13, 2007 |
| /s/  P. MICHAEL FARMWALD<br>P. Michael Farmwald | Director | September 13, 2007 |
| /s/  PENELOPE HERSCHER<br>Penelope Herscher | Director | September 13, 2007 |
| /s/  MARK HOROWITZ<br>Mark Horowitz | Director | September 13, 2007 |
| /s/  DAVID SHRIGLEY<br>David Shrigley | Director | September 13, 2007 |
| /s/  ABRAHAM D. SOFAER<br>Abraham D. Sofaer | Director | September 13, 2007 |

**Table of Contents**

## INDEX TO EXHIBITS

| Exhibit Number | Description of Document |
|---|---|
| 3.1(1) | Amended and Restated Certificate of Incorporation of Registrant filed May 29, 1997. |
| 3.2(2) | Certificate of Amendment of Amended and Restated Certificate of Incorporation of Registrant filed June 14, 2000. |
| 3.3(3) | Amended and Restated Bylaws of Registrant dated November 21, 2002. |
| 3.4(4) | Amendment No. 1 to Amended and Restated Bylaws of Registrant dated March 28, 2003. |
| 3.5(5) | Amendment No. 2 to Amended and Restated Bylaws of Registrant dated June 7, 2007. |
| 4.1(6) | Form of Registrant's Common Stock Certificate. |
| 4.2(6) | Amended and Restated Information and Registration Rights Agreement, dated as of January 7, 1997, between Registrant and the parties indicated therein. |
| 4.3.1(7) | Amended and Restated Preferred Stock Rights Agreement, dated as of July 31, 2000, between Registrant and Fleet National Bank. |
| 4.3.2(8) | First Amendment to the Amended and Restated Preferred Stock Rights Agreement, dated as of April 23, 2003, between Registrant and Equiserve Trust Company, N.A., as successor to Fleet National Bank. |
| 4.4(9) | Indenture, between the Registrant and U.S. Bank National Association, dated February 1, 2005 (including the form of Zero Coupon Convertible Senior Note due February 1, 2010 therein). |
| 4.5(9) | Registration Rights Agreement, among the Registrant, Credit Suisse First Boston LLC and Deutsche Bank Securities Inc., dated February 1, 2005. |
| 10.1(6) | Form of Indemnification Agreement entered into by Registrant with each of its directors and executive officers. |
| 10.2* | 1990 Stock Plan (as amended and restated as of April 4, 2007) and related form of agreement. |
| 10.3* | 1997 Stock Plan (as amended and restated as of April 4, 2007). |
| 10.4* | 1999 Nonstatutory Stock Option Plan (as amended and restated as of April 4, 2007) and related form of agreement. |
| 10.5(10)* | 2006 Equity Incentive Plan. |
| 10.6(19)* | 2006 Employee Stock Purchase Plan (as amended and restated as of February 21, 2007). |
| 10.7(11)(12)* | Amended and Restated John Danforth Employment Agreement, dated February 1, 2006, between Registrant and John Danforth. |
| 10.8(13)* | Offer Letter of Satish Rishi, dated April 7, 2006, between the Registrant and Satish Rishi. |
| 10.9* | Offer Letter of Thomas R. Lavelle, dated October 30, 2006, between the Registrant and Thomas R. Lavelle. |
| 10.10* | Offer Letter of Dr. Martin Scott, dated December 7, 2006, between the Registrant and Dr. Martin Scott. |
| 10.10(6)(11) | Semiconductor Technology License Agreement, dated as of November 15, 1996, between Registrant and Intel Corporation. |
| 10.11(14) | Amendment No. 1 to Semiconductor Technology License Agreement, dated as of July 10, 1998, between Registrant and Intel Corporation. |
| 10.12(11)(15) | Patent License Agreement, dated as of September 14, 2001, by and between the Registrant and Intel Corporation. |

**Table of Contents**

| Exhibit Number | Description of Document |
|---|---|
| 10.13(4) | Development Agreement, dated as of January 6, 2003, by and among Registrant, Sony Computer Entertainment Inc. and Toshiba Corporation. |
| 10.14(4) | Redwood and Yellowstone Semiconductor Technology License Agreement, dated as of January 6, 2003, between Registrant, Sony Corporation and Sony Computer Entertainment Inc. |
| 10.15(4) | Redwood and Yellowstone Semiconductor Technology License Agreement, dated as of January 6, 2003, between Registrant and Toshiba Corporation. |
| 10.16(6) | Standard Office Lease, dated as of March 10, 1991, between Registrant and SouthBay/ Latham. |
| 10.17(16) | Office Lease dated as of August 27, 1999, between Registrant and Los Altos—El Camino Associates, LLC. |
| 10.18(17) | Office Sublease, dated as of May 8, 2000, between Registrant and Muse Prime Software, Inc. |
| 10.19(18) | Amendment to Sublease, dated as of March 25, 2002, between Registrant and Muse Prime Software, Inc. |
| 21.1 | Subsidiaries of Registrant. |
| 24 | Power of Attorney (included in signature page). |
| 31.1 | Certification of Principal Executive Officer, pursuant to Rule 13a-14(a) and Rule 15d-14(a) of the Securities Exchange Act of 1934, as amended, as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 31.2 | Certification of Principal Financial Officer, pursuant to Rule 13a-14(a) and Rule 15d-14(a) of the Securities Exchange Act of 1934, as amended, as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002. |
| 32.1 | Certification of Principal Executive Officer, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 32.2 | Certification of Principal Financial Officer, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 99.1 | Selected Quarterly Financial Data. |

\* Management contracts or compensation plans or arrangements in which directors or executive officers are eligible to participate.
(1) Incorporated by reference to the Form 10-K filed on December 15, 1997.
(2) Incorporated by reference to the Form 10-Q filed on May 4, 2001.
(3) Incorporated by reference to the Form 10-K filed on November 26, 2002.
(4) Incorporated by reference to the Form 10-Q filed on April 30, 2003.
(5) Incorporated by reference to the Form 8-K filed on June 12, 2007.
(6) Incorporated by reference to Registration Statement No. 333-22885.
(7) Incorporated by reference to the Form 8-A12G/A filed on August 3, 2000.
(8) Incorporated by reference to the Form 8-A12G/A filed on August 5, 2003.
(9) Incorporated by reference to the Form S-3 filed on April 29, 2005.
(10) Incorporated by reference to the Form 8-K filed on May 16, 2006.
(11) Confidential treatment was granted with respect to certain portions of this exhibit. Omitted portions were filed separately with the Securities and Exchange Commission.
(12) Incorporated by reference to the Form 10-K filed on February 21, 2006.
(13) Incorporated by reference to the Form 10-Q filed on May 9, 2006.

Table of Contents

(14) Incorporated by reference to the Form 10-K filed on December 9, 1998.
(15) Incorporated by reference to the Form 10-K filed on December 4, 2001.
(16) Incorporated by reference to the Form 10-K405 filed on December 23, 1999.
(17) Incorporated by reference to the Form 10-Q filed on August 9, 2000.
(18) Incorporated by reference to the Form 10-Q filed on April 30, 2002.
(19) Incorporated by reference to the Form 10-Q for the period ended June 30, 2006 filed on September 14, 2007.